Brady SMITH, Appellant,

v.

Edward J. DERWINSKI, Secretary
of Veterans Affairs, Appellee.

No. 90–235.

United States Court of Veterans Appeals.

Argued March 21, 1991.

Decided May 8, 1991.

Eric L. Siegel, Potomac, Md., with whom Barton F. Stichman, Washington, D.C., was on the brief, for appellant.

Andrew J. Mullen, with whom Raoul L. Carroll, Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, and David W. Engel, Washington, D.C., were on the brief, for appellee.

Before MANKIN, HOLDAWAY and IVERS, Associate Judges.

IVERS, Associate Judge:

Appellant, Brady Smith, appeals from a January 30, 1990, Board of Veterans' Appeals (BVA or Board) decision which held that evidence received after the January 31, 1980, and subsequent rating decisions did not provide a new factual basis for finding that the veteran's spondylolisthesis was service-connected. We find that the sworn testimony of appellant and his wife was not adequately addressed in the BVA decision. Therefore, we remand due to the BVA's failure to comply with the requirements of 38 U.S.C. § 4004(d)(1) (1988).

Appellant served in the United States Navy from March 17, 1952, to March 7, 1956, and from October 16, 1956, to January 13, 1972. Appellant's medical records show that on July 10, 1964, he was seen and treated at the dispensary of his ship, the U.S.S. GREENWOOD, for a complaint of pain in his lumbosacral region. He was seen again for back pain on July 17 and 27,

1964. Appellant's pain persisted and on August 5, 1964, appellant was seen at Mac-Dill Air Force Base Hospital where X rays were taken. He was diagnosed as having a strain in his lumbosacral region which was recorded as "line of duty" and "not due to own misconduct." R. at 106. He was told to go home for a period of six weeks. *Id.* Since appellant's vessel was scheduled to leave, he was transferred to the U.S. Naval Hospital in Jacksonville, Florida. There, his diagnosis was changed to "spondylolisthesis, 1 degree, L5–S1." R. at 107. Spondylolisthesis is defined as "forward displacement of one vertebra over another, usually of the fifth lumbar over the body of the sacrum, or of the fourth lumbar over the fifth, usually due to a developmental defect in the pars interarticularis." Dorland's Illustrated Medical Dictionary 1567 (27th ed. 1988). The origin was changed from "line of duty" to "existing prior to enlistment." R. at 107. Appellant was a patient in the U.S. Naval Hospital from August 5, 1964, until August 18, 1964, where he was placed on analgesics and muscle relaxants. By August 18, 1964, he was found completely asymptomatic and was discharged to full duty.

Navy records show that appellant was treated again for back pain on October 20, 1964. However, on appellant's reenlistment examination, a report of a clinical evaluation of his spine and other musculoskeletal areas indicated that they were normal. There was no mention of any ongoing back problem. On September 28, 1965, an X ray was taken that revealed spondylolysis of the par interarticularis but no spondylolisthesis. R. at 6. Spondylolysis is not the same disorder as spondylolisthesis. Spondylolysis is defined as a "dissolution of a vertebra; a condition marked by platyspondylis, aplasia of the vertebral arch, and separation of the pars interarticularis." Dorland's at 1567. Platyspondylis is a "congenital [present at birth] flattening of the vertebral bodies," *Id.* at 111, and aplasia is a "lack of development of an organ or tissue, or of the cellular products from an organ or tissue." *Id.* at 1308. He was diagnosed as having acute iliolumbar strain, recurrent and advised to continue conservative treatment; in the opinion of the treating doctor, he was found to be qualified for Navy service. R. at 6. There were no other listings in the appellant's naval records concerning back pain or back injury. On both his August 4, 1970, reenlistment examination and his examination prior to transfer to the fleet reserve in January 1972, his spine and musculoskeletal areas were found to be normal.

There were no more recorded medical treatments for his back until March 13, 1979, when appellant saw a private physician. X rays revealed the presence of a bilateral spondylolysis and spondylolisthesis. On April 16, 1979, appellant had a lumbar laminectomy in which the entire posterior part of the separated vertebra was removed. Appellant filed a claim for compensation for the residuals of a back injury on January 31, 1980. A rating decision dated March 26, 1980, denied service connection on the grounds that there was no evidence of chronic back condition in service. Appellant's condition was ruled to be too remote in time to be associated with the complaints treated in service. R. at 140. Appellant did not appeal this decision.

Appellant sought to reopen his compensation claim on October 13, 1988. Medical records dated from 1981 through 1986 were submitted to the Veterans' Administration Regional Office (now the Department of Veterans Affairs Regional Office) (VARO). The VARO found that the evidence submitted to reopen his previously disallowed claim was not new and material and denied his claim on November 15, 1988. Appellant then submitted medical records related to right shoulder surgery to the VARO; these too were determined not new and material on December 5, 1988, and his claim was not reopened. Additional medical records were submitted but they only dated back to March 13, 1979. A rating decision on December 19, 1988, again denied reopening. Appellant filed a Notice of Disagreement to the December 19, 1988, decision on January 11, 1989. The BVA issued a decision on January 30, 1990, denying service connection. Appellant made a timely appeal to this Court. The Court has jurisdiction to

hear this appeal pursuant to 38 U.S.C. § 4052 (1988).

Normally, a disallowed claim cannot be reopened unless it falls under 38 U.S.C. § 3008 (1988). That section states:

> If new and material evidence is presented or secured with respect to a claim which has been disallowed, the administrator shall reopen the claim and review the former disposition of the claim.

Under *Manio v. Derwinski,* 1 Vet.App. 140, 145 (1991), the BVA is charged with determining whether the evidence submitted to reopen the claim was "new and material." In order for evidence to be "material," "there must be a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome." *Colvin v. Derwinski,* 1 Vet.App. 171, 174 (1991). The new evidence must also not be either cumulative or redundant. 55 Fed.Reg. 52,274, 52,275 (1990) (to be codified at 38 C.F.R. § 3.156(a) effective Jan. 22, 1991).

██ Once materiality is determined, the case will be reopened and the BVA must then assess the new and material evidence in the context of the other evidence of record and make new factual determinations as to whether the claim should be allowed. *Jones v. Derwinski,* 1 Vet.App. 210, 215 (1991).

The VARO, in its December 19, 1988, rating decision, did not specifically note a finding that the new evidence submitted by appellant was "new and material." Likewise, on appeal, the BVA did not expressly consider whether appellant had produced new and material evidence. According to the record, the "new" evidence consisted of records of hospital treatment approximately seven years after service, along with a report of a VA hospitalization for a shoulder condition, and the sworn oral testimony of appellant and his wife. The Board only commented on the first two pieces of evidence. The Board stated:

> [T]he veteran has presented *evidence* of hospital treatment, approximately seven years after service, along with a report of a Veterans Administration hospitalization for a condition not herein pertinent. While the Board has carefully considered this evidence, reports of such treatment, many years after service, may not serve to establish that a back disorder had its origin in service. Accordingly, in the *absence of new and material evidence* or a showing of error, service connection for a back disorder is not warranted.

*Brady Smith,* loc. no. 003218, at 4–5 (BVA Jan. 30, 1990) (emphasis added). The Board made no comment on the oral testimony. The Court is not certain that the BVA considered this new evidence. While it is true that the Board listed both the new medical records submitted to the VARO after the 1980 decision, and the oral testimony of appellant and his wife, along with the evidence previously on record at the VARO, in the evidence section, it is not clear in the Board's decision that the Board found that there was new and material evidence and thus reopened the case; if the Board did, the Court holds that a proper consideration of all the evidence, both old and new as required by *Manio* and *Jones* did not occur.

The record is devoid of any medical evidence of appellant's back condition from 1965 through his discharge in 1972 and through 1979. Appellant does attempt to explain these deficiencies through his sworn testimony and that of his wife. He stated that he did not disclose to his examiners that he was having back problems because he wanted to retain his right to receive a naval pension. From 1972 through 1979, appellant stated that he relied on home remedies such as heating pads and pain relievers and that it was not until 1979 that his back pain was so excruciating that he had to see a doctor. R. at 200–2.

██ Credibility is determined by the fact finder. As this Court determined in *Jones,* at 217, the Court cannot determine the credibility of a veteran's sworn testimony. Determination of credibility is a func-

tion for the BVA. The Court holds that such a determination is needed here. *See also Hatlestad v. Derwinski*, 1 Vet.App. 164, 170, 171 (1991) (remanded in part for the Board to provide reasons or bases for its assessment of appellant's personal, sworn testimony as evidence); *Webster v. Derwinski*, 1 Vet.App. 155, 159 (1991) (remanded in part for the Board to provide reasons or bases in assessing the sworn testimony of appellant and his physician); *Ohland v. Derwinski*, 1 Vet.App. 147, 148–149 (1991) (remanded in part for the Board to provide reasons or bases for its assessment of the lay evidence provided by appellant and his wife).

As we recently expressed in *Hatlestad,* at 169:

> [i]n order to enable a claimant to understand a decision and the reasons behind it, as well as to assist in judicial review, the BVA is required by 38 U.S.C. § 4004(d)(1) (1988) to include in its decisions "a written statement of [its] findings and conclusions, and the reasons or bases for those findings and conclusions...." *See Gilbert v. Derwinski,* [1 Vet.App. 49, 56–57] (1990); *Sammarco v. Derwinski,* [1 Vet.App. 111, 112–114] (1991). As to the statement of findings, "the Board must identify those findings it deems crucial to its decision and account for the evidence which it finds to be persuasive or unpersuasive." *Gilbert,* at 57; *Sammarco,* at 114.

Here, the Board's decision failed to contain a statement of "reasons or bases" to support its assertion that "[t]he evidence received since that time [VARO decision in March 1980] has not served to alter the factual basis in the earlier decision." *Brady Smith,* loc. no. 003218, at 5 (BVA Jan. 30, 1990). *See Gilbert* at 56–57.

Appellant asks the Court to take judicial notice that appellant's spondylolisthesis is chronic. Courts may take judicial notice of *facts* not subject to reasonable dispute. Fed.R.Evid. 201(b) 1990. We do not find the application of judicial notice applicable. The "fact" that spondylolisthesis is chronic is subject to reasonable dispute. It is, in reality, an opinion not a fact, of which judicial notice is sought. The medical treatises submitted by appellant to the Court in support of his judicial notice argument do not confirm that spondylolisthesis is, in all instances, chronic. Furthermore, such texts are better suited for submission to the VARO or BVA prior to decision.

Therefore, the decision of the Board is VACATED, and the case is REMANDED for action consistent with this opinion.