Lawrence E. WILSON, Appellant,

v.

Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.

No. 90–673.

United States Court of Veterans Appeals.

Submitted July 24, 1991.

Decided Dec. 13, 1991.

As Amended Dec. 16, 1991.

Joseph A. Violante, Washington, D.C., was on the brief, for appellant.

Raoul L. Carroll, Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Andrew J. Mullen, Deputy Asst. Gen. Counsel, and Deborah W. Singleton, Washington, D.C., were on the brief, for appellee.

Before MANKIN, HOLDAWAY and STEINBERG, Associate Judges.

MANKIN, Associate Judge:

Veteran, Lawrence E. Wilson, appeals from a March 23, 1990, decision of the Board of Veterans' Appeals (BVA or Board) denying service connection for a low back disorder. Because the BVA failed to consider adequately all the evidence in the record and give sufficient "reasons or bases" for its decision, and because the Veterans' Administration (now the Department of Veterans Affairs) (VA) failed in its duty to assist and thus appellant's claim was improperly evaluated, the BVA decision is vacated and the case remanded for readjudication of the claim in accordance with this opinion. Appellee's Motion for Summary Affirmance is denied.

## I. FACTUAL BACKGROUND

Mr. Wilson served on active duty in the Navy from November 22, 1968, to November 15, 1972. R. at 9. No back abnormalities were noted in the September 1968 Report of Entrance Medical Examination. R. at 10–11. The service medical records reveal that the veteran injured his back and was first treated on May 31, 1970. The clinical impression was muscle strain. R. at 17–18. He was seen again for the worsening recurrent back pain on June 1, 1970. R. at 18. After injuring his back lifting tools on a ship the night before, Wilson was treated on July 28, 1972, for a lumbosacral strain, characterized by limited motion on twisting and bending. R. at 24–25.

On July 31, 1972, he was seen for a follow-up medical examination for recur-

rent back pain which resumed in February 1972. R. at 25, 27. The impression at this time was acute lumbosacral myofascial strain, ruling out a disc problem. R. at 27. A medical examination of August 9, 1972, indicated persistent back pain that would get worse with movement and driving a car. R. at 28. First degree pain in the low back on both sides and paresthesia (sensation of pricking or tingling usually associated with injury or irritation of a sensory nerve or nerve root) in the back of both thighs after sitting was noted. A paravertebral spasm and tenderness of the lumbosacral spine was noted, as well as possible spondylolysis at L–5 and spina bifida occulta sacrum revealed by the X rays. R. at 28. The August 10, 1972, examination showed that he had continuous back pain for two years and experienced difficulty working on the ship. The doctor's plan was to put him on medical hold until discharge. R. at 29. The August 16, 1972, consultation sheet indicates that Wilson's condition had not improved and that he was being referred back through the channels for the purpose of re-evaluation and documentation of his limitations because he had been unable to perform his job on the ship. At that time, there was some doubt as to his fitness for further duty without limiting conditions. R. at 31. As a result of the veteran's physical limitations, he was placed on medical hold until his discharge from service. R. at 32–33. The November 1972 Report of Separation Examination did not mention any defects in the veteran's condition and found him to be physically qualified to perform all duties. R. at 34–36.

Private medical records submitted by the veteran show treatment for low back sprain on July 25, 1977. R. at 39, 42, 45, 48, 51. On January 14, 1980, the veteran injured his back at work and was treated the following day and for the next five days; however, the spasm persisted in the lumbosacral area and left leg. R. at 40–41, 43–44, 46–47, 49–50, 52–53. On May 31, 1988, the veteran applied for VA compensation and pension for the following conditions: scar on the right index finger, back condition, right eye melanoma, otitis media

right ear, and sinus. R. at 54–57. A series of VA medical examinations was performed in July 1988. R. at 58–74. On July 18, 1988, it was the impression of two different VA doctors that the veteran had spondylolisthesis of the back, probably on the basis of degenerative disc disease and chronic degenerative arthritis of the spine. R. at 66, 72. A final diagnosis was given of possible herniated disc causing right low back pain with right leg radiation. R. at 74.

The November 7, 1988, rating decision by the Regional Office (RO) found service connection for the scar on the right index finger and the carbuncle (painful inflammation) of the right eye, rated the disability at 0%, and found no service connection for the lumbosacral strain, right ear otitis media, left ear otitis externa, and sinusitis because these were acute and transitory. R. at 75–76. Appellant filed his Notice of Disagreement with that decision regarding only the alleged chronic lower lumbosacral strain and the Board dealt only with that condition in its decision; therefore, only this condition will be discussed further. R. at 79. In March 1989, the veteran submitted private medical records dated variously from 1979 to 1986 indicating treatment for low back pain. R. at 84–88. Also submitted was a letter from the Benson Chiropractic Center dated in February 1989 confirming treatment in 1977 and 1981 for low back and right leg pain. R. at 89.

On March 23, 1989, the rating board confirmed the previous denial of service connection for a chronic low back strain. R. at 101. At a personal hearing held at the RO on May 16, 1989, the veteran testified under oath that his back pain continued after being discharged from the Navy. Because he could not afford to get medical treatment, he borrowed his father's pain medications to treat himself. R. at 108. Appellant first sought treatment roughly five years after service upon acquiring medical insurance. R. at 109. The hearing officer concluded that "the testimony and documentary evidence are still not considered sufficient to warrant a grant of service connection for the claimed disability." R.

at 116. The BVA decision of March 1990 denied appellant's claim by concluding that "[t]he veteran does not have a low back disorder that was incurred in or aggravated by service, nor may arthritis of the spine be presumed to have been incurred in service." *Lawrence E. Wilson*, BVA 90–37332, at 8 (Mar. 23, 1990). From this BVA decision the veteran presents his appeal to this Court.

## II. ANALYSIS

### A.

Appellant has applied for service connection for a low back disorder under 38 U.S.C. § 1110 (formerly § 310). Service connection may be proven by "affirmatively showing inception or aggravation during service or through the application of statutory presumptions.... Determinations regarding service connection are to be based on review of the entire evidence of record." 38 C.F.R. § 3.303(a) (1991). A veteran who served for 90 days or more during a period of war is entitled to a presumption of service connection of a chronic disease, such as arthritis, if it becomes manifest to a degree of 10% or more within one year from the date of termination of such service. 38 U.S.C. §§ 1101(2), (3), 1112(a) (formerly §§ 301, 312); 38 C.F.R. §§ 3.307, 3.309 (1991). With a chronic disease such as arthritis "shown as such in service (or within the presumptive period under § 3.307) so as to permit a finding of service connection, subsequent manifestations of the same chronic disease at any later date, however remote, are service connected, unless clearly attributable to intercurrent causes.... For the showing of chronic disease in service there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time.... When the disease identity is established ..., there is no requirement of evidentiary showing of continuity." 38 C.F.R. § 3.303(b) (1991).

While the Board concedes that the veteran suffered back problems while in service, it relies on the fact that no formal diagnosis of a "chronic acquired back disorder was established in service.... [and] that the episodes of lumbosacral strain which the veteran experienced in service were acute and transitory and resolved without residual disability." *Wilson*, BVA 90–37332, at 6–7. It appears from the medical evidence that the combination of manifestations of back problems during service or within the presumptive period was not sufficient to identify specifically the chronic disease of arthritis. Even though spondylolysis at L5 was suspected during service in August 1972, no definite diagnosis was made during that time.

Since no chronic disease was ever diagnosed either during service or during the presumptive period, the appellant must establish service connection by affirmatively showing that his back disability was incurred coincident with his service in the Navy. "Continuity of symptomatology is required only where the condition noted during service (or in the presumptive period) is not, in fact, shown to be chronic or where the diagnosis of chronicity may be legitimately questioned. When the fact of chronicity in service is not adequately supported, then a showing of continuity after discharge is required to support the claim." 38 C.F.R. § 3.303(b) (1991). The regulation requires continuity of symptomatology, not continuity of treatment.

At the May 16, 1989, hearing appellant testified as to the continuity of the symptoms suffered after his discharge from the Navy and submitted private medical records. R. at 111. The BVA decision includes neither an analysis of "the credibility or probative value of the evidence submitted by or on behalf of the veteran in support of his claim ...," nor any explanation of the Board's conclusion that the claimant's back disorder was not service connected under the regulations that the BVA finds applicable here. *Hatlestad v. Derwinski*, 1 Vet.App. 164, 169 (1991) (quoting *Gilbert v. Derwinski*, 1 Vet.App. 49, 58 (1990)). The Board considered the sworn testimony before a hearing officer as part of "THE EVIDENCE" in the case, but made no express credibility determinations regarding his testimony in the "DIS-

CUSSION AND EVALUATION" portion of its decision. *See Wilson,* BVA 90–37332, at 5–7.

■ It is the duty of the fact finder to determine credibility. The Court cannot determine the credibility of a veteran's sworn testimony. *Smith v. Derwinski,* 1 Vet.App. 235, 237 (1991) (quoting *Jones v. Derwinski,* 1 Vet.App. 210, 214 (1991)). "Determination of credibility is a function for the BVA." *Smith,* 1 Vet.App. at 237. The Court holds that such a determination is needed here, and therefore remands the case to the BVA for that purpose. *See Smith,* 1 Vet.App. at 238. *See also Hatlestad,* 1 Vet.App. at 169, 170 (remanded in part for the Board to provide reasons or bases for its assessment of appellant's personal, sworn testimony as evidence); *Webster v. Derwinski,* 1 Vet.App. 155, 159 (1991) (remanded in part for the Board to provide reasons or bases in assessing the sworn testimony of appellant and his physician); *Ohland v. Derwinski,* 1 Vet.App. 147, 149 (1991) (remanded in part for the Board to provide reasons or bases for its assessment of the lay evidence provided by appellant and his wife).

■ It is well established that in order to enable a VA claimant to understand a decision and the reasons behind it, as well as to assist in judicial review, the BVA is required by 38 U.S.C. § 7104(d)(1) (formerly § 4004) to include in its decisions "a written statement of [its] findings and conclusions, and the reasons or bases for those findings and conclusions . . . ." *See Smith,* 1 Vet.App. at 238; *Hatlestad,* 1 Vet.App. at 169; *Ohland,* 1 Vet.App. at 149; *Sammarco v. Derwinski,* 1 Vet.App. 111, 112–114 (1991); *Gilbert,* 1 Vet.App. at 56. As to the statement of its findings, "the Board must identify those findings it deems crucial to its decision and account for the evidence which it finds to be persuasive or unpersuasive." *See Smith,* 1 Vet.App. at 238; *Hatlestad,* 1 Vet.App. at 169; *Ohland,* 1 Vet.App. at 149; *Sammarco,* 1 Vet.App. at 114; *Gilbert,* 1 Vet.App. at 57.

Here, the BVA decision fails to include an analysis of the credibility or probative value of the evidence submitted by or on behalf of the veteran in support of his claim, or an explanation of the Board's conclusion that, "[t]he veteran does not have a low back disorder that was incurred in or aggravated by service, nor may arthritis of the spine be presumed to have been incurred in service." *Wilson,* BVA 90–37332, at 8. In *Gilbert, Ohland, Hatlestad,* and *Smith,* the Court remanded the case in part because the BVA decision contained no such "reasons or bases" for its assessment of the oral testimony or for its implicit rejection of this evidence. *Smith* 1 Vet.App. at 238; *Hatlestad,* 1 Vet.App. at 169; *Ohland,* 1 Vet.App. at 149; *Gilbert,* 1 Vet.App. at 58. The case is remanded for readjudication and such determinations.

### B.

■ Once a claimant has submitted a well-grounded claim, the Secretary is required to "assist such a claimant in developing the facts pertinent to the claim." 38 U.S.C. § 5107(a) (formerly § 3007); 38 C.F.R. § 3.103(a) (1991); *Godwin v. Derwinski,* 1 Vet.App. 419, 425 (1991); *Moore v. Derwinski,* 1 Vet.App. 401, 405 (1991); *Murphy v. Derwinski,* 1 Vet.App. 78, 80–81 (1990). The veteran did present "a plausible claim, one which is meritorious on its own or capable of substantiation." *Godwin,* 1 Vet.App. at 425; *Murphy,* 1 Vet. App. at 80–81. Once the veteran has presented such a claim, the burden is shifted to the Secretary to assist the veteran in developing *"all* relevant facts, not just those for or against the claim." *Godwin,* 1 Vet.App. at 425; *Murphy,* 1 Vet.App. at 82.

We find that the veteran did provide a well-grounded claim; thus, the VA was bound by its duty to assist the veteran in developing his claim. The medical examinations performed in July 1988 did not have the benefit of the veteran's past medical history and private medical records. Even without these records, two VA doctors agreed that the veteran had spondylolisthesis of the back, probably on the basis of degenerative disc disease and chronic degenerative arthritis of the spine. R. at 66, 72. Even when the VA did receive the

private medical records in 1989, no new medical examination was performed before the rating board confirmed the denial of service connection for chronic back disorder on March 23, 1989. The duty to assist was breached by both the RO and the Board in not recognizing that the July 1988 medical examination had failed to include an opinion as to whether there was any possible relationship between the veteran's past back problems incurred in service and the current back problems.

In this case, the "fulfillment of the statutory duty to assist ... includes the conduct of a thorough and contemporaneous medical examination, one which takes into account the records of prior medical treatment, so that the evaluation of the claimed disability will be a fully informed one," *Green v. Derwinski,* 1 Vet.App. 121, 124 (1991) (quoting *Littke v. Derwinski,* 1 Vet. App. 90, 92 (1990)), and an examination report which includes "a medical opinion as to whether [the veteran's] current disabilities are in any way related to ... those experiences in service." *Moore,* 1 Vet.App. at 405 (quoting *Witherspoon v. Derwinski,* 2 Vet.App. 4, 4–5 (per curiam order, 1991)). Because we find that the record before the BVA was inadequate, a remand of the case is required pursuant to 38 U.S.C. § 7261(a)(3)(D) (formerly § 4061) for a new medical examination pursuant to 38 C.F.R. § 19.182(a) (1991), including a review of all the private medical records during such examination, in compliance with the duty to assist under 38 U.S.C. § 5107(a) and 38 C.F.R. § 3.103(a) (1991).

### III. CONCLUSION

We vacate the decision of the BVA and remand for readjudication and proceedings consistent with this opinion. The Court retains jurisdiction and directs that, whether the Secretary grants or denies the relief sought by the veteran, the Secretary supplement the record on appeal to include the further action by the Board. The supplemental record shall be filed with the Court within 45 days after the readjudication of the appellant's claim. Within 14 days after such filing, appellant shall notify the Clerk whether he desires to seek further review by the Court.

*It is so Ordered.*