**Joel B. CULVER, Appellant,**

v.

**Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.**

**No. 90–960.**

United States Court of Veterans Appeals.

Decided Sept. 29, 1992.

Joel B. Culver, pro se.

James A. Endicott, Jr., Gen. Counsel, David T. Landers, Acting Asst. Gen. Counsel, R. Randall Campbell, Deputy Asst. Gen. Counsel, and Michael A. Leonard, Washington, D.C., were on the motion, for appellee.

Before MANKIN, IVERS and STEINBERG, Associate Judges.

MANKIN, Associate Judge:

On August 18, 1992, the Secretary of Veterans Affairs (Secretary) filed a motion for reconsideration of the August 4, 1992, opinion issued in this appeal. The basis for the Secretary's motion is that, in the Secretary's view, the Court's August 4, 1992, decision was based upon a faulty premise. The Secretary asserts that under the applicable law and regulations nervous disorders and post-traumatic stress disorder (PTSD) are not chronic diseases which may entitle a veteran to service connection on a presumptive basis. The Secretary further asserts that, although the Court mentions psychoses as being in the list of chronic diseases, nervous disorders and PTSD are not psychoses.

On September 29, 1992, the Court issued an order granting the Secretary's motion for reconsideration and vacating the decision of August 4, 1992. This decision is issued in its stead.

Appellant, Joel B. Culver, appeals from a May 25, 1990, Board of Veterans' Appeals (BVA or Board) decision which denied entitlement to service connection for PTSD, gastric ulcer disease, and a right shoulder disability, and denied entitlement to an increased (compensable) evaluation for otitis externa. The Secretary filed a motion for summary affirmance. The Court has jurisdiction pursuant to 38 U.S.C. § 7252(a) (formerly § 4052(a)). The Secretary's motion is granted in part and denied in part. The decision of the Board is affirmed in part,

vacated in part, and remanded in part for proceedings consistent with this opinion.

## I. BACKGROUND

Joel B. Culver served on active duty from August 1969 to March 1971. His entrance physical examination appeared normal. In February 1970, he cut his right shoulder in a fall and had the resulting sutures removed on March 26, 1970. Apparently in August 1968, the veteran was in an automobile accident where he injured his back and suffered blackout spells which required continuous treatment while in service. A March 1971 service medical record shows treatment for otitis externa associated with persisting ear trouble. Appellant's March 8, 1971, physical examination noted abnormal "EARS-GENERAL," but no audiometric examination was performed. The veteran's certificate of discharge shows that he was awarded the National Defense Service Medal, Vietnam Service Medal, Vietnam Campaign Medal, Army Commendation Medal, Bronze Star Medal, and Air Medal.

For approximately thirteen years after his service in Vietnam, the veteran complained of "black out spells," dizzy spells, and nausea. In August 1984, an electroencephalogram revealed a low amplitude alpha rhythm, but the doctor could make no correlation to the veteran's complaints without further clinical information. In October 1984, the veteran had groin pain of unknown etiology, and a neurological record noted his near syncopal experiences for the past thirteen years; the impression was "probable anxiety." At an Agent Orange examination, the veteran complained of headaches; sores; blurred vision; sore throat when nervous; stiff neck; breathing troubles; palpitation of the heart when nervous; stomach disorders, including diarrhea associated with nervousness; lymph node swellings; arthritis in knees, ankles and hips; frequent nervousness; and frequent dreams about Vietnam.

In February 1985, he still complained of dizziness since his return from Vietnam, throat problems, and an inner ear problem. The veteran filed his original claim for com-

pensation with the Veterans' Administration (now the Department of Veterans Affairs) (VA) on February 28, 1985. A July 1985 ear, nose, and throat (ENT) examination confirmed a hearing loss, and all his symptoms showed the possibility of dysautonomia (a familial disorder of the nervous system characterized especially by multiple sensory deficiency (as of taste and pain) and excessive sweating and salivation). WEBSTER'S MEDICAL DESK DICTIONARY 196 (1986). The doctor referred the veteran to the ENT clinic and recommended an autonomic nervous system test. In an August 1985 VA examination, the veteran's hearing was within normal limits bilaterally. A general medical examination in October 1985 diagnosed right shoulder bursitis and referred the veteran to a neurological examination, which noted vague spells of dizziness of uncertain significance and alcohol on the veteran's breath, suggesting moderate alcoholism. No abnormality was identified in his right shoulder. In October 1985, the veteran was diagnosed with otitis externa.

In February 1986, he was diagnosed with peptic ulcers. The follow-up examination appeared normal, except for a hiatal hernia. In March 1986, he complained of "nerve problems" since his return from Vietnam and chronic right shoulder pain. The original rating decision of May 27, 1986, found the following non-service-connected disabilities: a 10% rating for blackout and dizzy spells, a 0% rating for chronic ear disability (not shown by evidence of record), a 20% rating for a gastric ulcer with hiatal hernia and esophagitis, and a 10% rating for bursitis in the right shoulder, for a combined non-service-connected disability rating of 40%. Appellant filed a Notice of Disagreement in August 1986.

On July 21, 1986, a private physician, Dr. William R. Brown, certified that he had been seeing Culver since February 17, 1986, for migraine headaches, bursitis of the right shoulder, and phlebitis of the left arm. The veteran appealed to the BVA on September 30, 1986, and mentioned that he contracted phlebitis after the VA doctors injected some medication into his veins.

The rating decision of October 16, 1986, affirmed the May 1986 decision, but added the following non-service-connected disabilities: 0% for migraine headaches and 0% for phlebitis of the left arm, for an unchanged combined disability rating of 40%. The VA Regional Office (VARO) deferred a decision for development of the veteran's claim under 38 U.S.C. § 1151 (formerly § 351) for the phlebitis. The August 24, 1987, BVA decision awarded service connection for the ear problem, and found that the dizzy spells were not aggravated by service and that he was not entitled to a permanent and total disability rating. A rating decision of September 15, 1987, found the service-connected ear problem 0% disabling and his other non-service-connected disabilities remained at a combined disability rating of 40%. Finally, on March 1, 1988, the VARO denied his claim under section 1151.

On August 3, 1988, the veteran filed to reopen his claim for an increased rating for his service-connected hearing problem, and to claim service connection for PTSD. A friend of the veteran's submitted an August 8, 1988, statement regarding the changes in appellant's behavior upon his return from Vietnam. On August 11, 1988, the VARO issued a deferred rating decision to obtain information about the veteran's specific stressful events in service. In August 1988, an examination at the Memphis, Tennessee, VA Medical Center (VAMC) ruled out peptic ulcer disease and diagnosed appellant with mild gastritis and mild impingement syndrome in the right shoulder.

On August 23, 1988, appellant filed a claim for right shoulder disability, nerves, and ulcers. On August 24, 1988, Dr. Harold L. Blanton, the veteran's family physician for over ten years, examined appellant, noting that: the veteran stated that he had a nervous breakdown only two months after returning from Vietnam; in service he complained of a stomach disorder and suffered from severe tension anxiety/depression syndrome, which in turn increased the acid in his stomach and caused bleeding ulcers requiring treatment in the VAMC in Birmingham and currently; he still had headaches, dizzy spells, poor con-

centration, and pain syndrome in the muscles and joints of his neck, shoulders, arms, legs, and knees resulting from a concussion he suffered in service; he developed a skin rash which was a nervous-type rash resulting secondarily from his tension anxiety; and he had continuous ear trouble since Vietnam, with drainage and partial deafness in the right ear. Dr. Blanton concluded:

> His general condition has become such that he is not physically able to carry out the duties of this type [of] physical work [hanging sheetrock]. Due to the facts as listed above and [that he] has been watched by me as family physician for several years, I feel like the man is definitely disabled, and disabled as a result of his military service....

On August 25, 1988, the veteran's sister, Rebecca Bumper, noted that the veteran suffered from a nervous breakdown about two months after returning from Vietnam, had frequent and continuous ear infections, had sores all over his body, and experienced pain and stiffness in his right shoulder. An audiometric examination performed in September 1988 revealed some mild hearing loss.

The VA referred appellant for a psychiatric examination by Dr. Joseph E. Crupie, who concluded on September 13, 1988, that the veteran

> lived in a very primitive way [in the woods] for seven or eight years after he came back from Vietnam. He has some of the aspects of a post traumatic stress disorder, but there is [sic] no definitive symptoms that can be attributed to specific events. At any rate, this man has a major emotional impairment which manifests itself in two ways: 1) his gastrointestinal symptoms and 2) his interpersonal relations.... I do not think he is employable at this time.

The diagnostic impression was: 1) anxiety disorder, generalized; 2) schizoid personality traits; 3) chronic ear infection (by history); 4) painful right shoulder (impinged nerve, by history). On September 22, 1988, the veteran responded to the VA's request

for specific information regarding names and places where he served in Vietnam.

During a September 26, 1988, VA examination, the physician noted:

> The records are currently unavailable as they were not on his last presentation to this clinic. At that time we requested that his records be available so that we could thoroughly evaluate the patient in the best interest of the review board. It is the opinion of this examiner that the patient would benefit as would the review board from examination of the patient and review of his medical records.

The VA physician continued that "his impression is normal physical examination without otitis externa on a chronic basis without his medical records.... Please obtain this veteran's records from the other VA and have him re-evaluated so as to obtain a maximal benefit for this patient." During an emergency visit on October 7, 1988, the veteran was treated with anti-inflammatory drugs and antibiotics for otitis externa and right shoulder pain. In his claim for service-connected disability compensation for his right shoulder, ulcers, ear problems, and nerves, the veteran noted treatment for these ailments by Dr. Norman Garrison in Birmingham, Alabama, Dr. Carpenter in Courtland, Alabama, Dr. McCorcle in Town Creek, Alabama, Dr. Harold Blanton in Moulton, Alabama, Dr. William Brown in Corinth, Mississippi, and Dr. Charles Daricer in Corinth, Mississippi, and at the VA Hospitals in Birmingham, Alabama, and Memphis, Tennessee. On October 28, 1988, the VARO denied service connection for PTSD, generalized anxiety disorder, right shoulder condition, and an ulcer, and denied an increased rating for service-connected otitis externa.

On November 28, 1988, Dr. Carl Welch found that the veteran had "bilateral serous otitis media" and stated:

> Medical notes (SF 600) from 1 Mar 71 in Vietnam use the diagnosis of "otitis externa," which was probably true of right ear. However, the clinical description of the left ear is clearly that of otitis media and otitis externa is precluded....

After reviewing Dr. Welch's statement, on February 21, 1989, the VARO confirmed the previous rating decision and denied a compensable evaluation for otitis externa. In April 1989, the veteran filed his Notice of Disagreement with the October 1988 and February 1989 rating decisions. Appellant proceeded with his appeal to the BVA. On May 25, 1990, the BVA denied service connection for PTSD, gastric ulcer disease, and a right shoulder disability and entitlement to an increased (compensable) rating for otitis externa. *Joel B. Culver*, BVA 90–16887 (May 25, 1990). From that decision, appellant perfected his appeal to this Court.

## II. ANALYSIS

### A. Post-traumatic Stress Disorder

 When a veteran presents a well-grounded claim for service connection, the Secretary has a duty to assist the veteran in developing the facts pertinent to his claim. 38 U.S.C. § 5107(a) (formerly § 3007(a)); *Godwin v. Derwinski*, 1 Vet. App. 419, 425 (1991); *Moore v. Derwinski*, 1 Vet.App. 401, 405 (1991); *Murphy v. Derwinski*, 1 Vet.App. 78, 80–81 (1990). The veteran did present "a plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of § [5107(a)]." *Murphy*, 1 Vet.App. at 81. Once the veteran has presented such a claim, the burden is shifted to the Secretary to assist the veteran in developing "*all* relevant facts, not just those for or against the claim." *Murphy*, 1 Vet.App. at 82. The Secretary's duty includes assisting the veteran in obtaining both government and civilian records. *Id.*

After the September 1988 VA psychiatric examination indicating some of the aspects of PTSD, the VA apparently requested that the veteran submit more specific information regarding the stressful events he experienced in Vietnam with names of people and places. The veteran did submit such information, which the VA failed to substantiate through a search by the U.S. Army and Joint Services Environmental

Support Group to verify the specific Vietnam stressors described by the veteran.

■ Post-traumatic stress disorder and any other nervous disorders are evaluated under 38 C.F.R. § 4.132 (1991), the schedule of ratings for mental disorders. While the veteran and service representative requested entitlement to service connection for PTSD and a nervous disorder, among other disabilities, and the Statement of the Case acknowledged that service connection for a nervous disorder was in issue, the BVA failed to address the nervous disorder issue clearly raised in the proceedings below. The BVA "must review all issues which are reasonably raised from a liberal reading of the appellant's substantive appeal." *Azurin v. Derwinski,* 2 Vet.App. 489, 491–92 (1992); *Mingo v. Derwinski,* 2 Vet.App. 51, 54 (1992) (citing *Myers v. Derwinski,* 1 Vet.App. 127, 129 (1991)). The VA's statutory "duty to assist" the veteran under 38 U.S.C. § 5107(a) to develop the facts pertinent to his claim must extend the liberal reading given to a veteran's substantive appeal "to include issues raised in all documents or oral testimony submitted prior to the BVA decision." *EF v. Derwinski,* 1 Vet.App. 324, 326 (1991).

The VARO's October 1988 rating decision recognized the diagnosis of generalized anxiety disorder under 38 C.F.R. § 4.132, Diagnostic Code (DC) 9400, but found it to be non-service-connected and 0% disabling. The BVA failed to comply with its duty to assist the veteran when it disregarded the issue of service connection for a nervous disorder, specifically addressed by the VARO as generalized anxiety disorder and specifically raised by the veteran in his Form 1–9 Appeal.

■ The Secretary also failed to acquire certain medical records of which it had notice. Where a well-grounded claim has been presented, the statutory duty to assist requires the VA to obtain all pertinent medical records which have been called to its attention by the veteran and the evidence of record. *See Murincsak v. Derwinski,* 2 Vet.App. 363, 373 (1992); *Ivey v. Derwinski,* 2 Vet.App. 320, 323 (1992). The veteran specifically mentioned

treatment for his nerves by Dr. Garrison from 1971 to 1974, Dr. Carpenter (treatment dates unknown), Dr. McCorcle in 1978, and Dr. Blanton from "197[?]–1988", in addition to treatment in the VA hospitals in Birmingham, Alabama, and Memphis, Tennessee. During the September 1988, psychiatric examination, Dr. Crupie specifically noted that the information in his report was obtained by personal interview with the veteran as no other sources were made available. The records referred to by the veteran were neither requested nor reviewed by the VA in adjudicating appellant's claim for a service-connected nervous disorder, including PTSD.

■ The BVA also failed to address the statements of the veteran, of his family physician of ten years, Dr. Blanton, and of the veteran's sister, Ms. Bumper, who attested that the veteran suffered a nervous breakdown only two months after his return from Vietnam. The BVA simply rejected the evidence of the veteran's nervous breakdown shortly after service by stating that "this is not *objectively* documented." *Culver,* BVA 90–16887, at 7 (emphasis added). The aforesaid statements and testimony, if corroborated by the aforementioned medical records which the VA failed to obtain, are pertinent to developing the veteran's claim of service connection.

The BVA also failed in its obligation to address the credibility of the veteran's testimony, and his sister's and his family physician's statements. Determination as to service connection "must be considered on the basis of ... all pertinent medical and lay evidence." 38 C.F.R. § 3.303(a) (1991); *see also Cartright v. Derwinski,* 2 Vet. App. 24, 25 (1991). It is the duty of the BVA as the factfinder to determine credibility of the testimony and other lay evidence. *Wilson v. Derwinski,* 2 Vet.App. 16, 20 (1991); *Smith v. Derwinski,* 1 Vet. App. 235, 237–38 (1991). The Court holds that such a determination is needed here, and therefore remands the case to the BVA for that purpose. *See Wilson,* 2 Vet.App. at 20; *Smith,* 1 Vet.App. at 238; *see also Hatlestad v. Derwinski,* 1 Vet.App. 164,

169–70 (1991) (remanded in part for the Board to provide reasons or bases for its assessment of appellant's personal, sworn testimony as evidence); *Webster v. Derwinski*, 1 Vet.App. 155, 159 (1991) (remanded in part for the Board to provide reasons or bases in assessing the sworn testimony of appellant and his physician); *Ohland v. Derwinski*, 1 Vet.App. 147, 149 (1991) (same result with respect to the lay evidence provided by appellant and his wife).

It is well established that in order to enable a VA claimant to understand a decision and the reasons behind it, as well as to assist in judicial review, the BVA is required by 38 U.S.C. § 7104(d)(1) (formerly § 4004(d)(1)) to include in its decisions "a written statement of [its] findings and conclusions, and the reasons or bases for those findings and conclusions...." *Wilson*, 2 Vet.App. at 20. *See Smith*, 1 Vet.App. at 238; *Gilbert v. Derwinski*, 1 Vet.App. 49, 58 (1990). Here, the BVA decision failed to include an analysis of the credibility or probative value of the evidence submitted by or on behalf of the veteran in support of his claim for service-connected PTSD, or an explanation of the Board's finding that testimony regarding the veteran's nervous breakdown shortly after service was "not *objectively* documented." *Culver*, BVA 90–16887, at 7 (emphasis added).

### B. Gastric Ulcer Disease

■ The BVA denied service connection for gastric ulcer disease by merely finding that it "was not demonstrated during service or for many years thereafter." *Culver*, BVA 90–16887, at 8. First, the BVA failed to satisfy 38 U.S.C. § 7104(d)(1) by providing a written statement of its findings and conclusions, and reasons or bases to support its findings and conclusions regarding the veteran's gastric ulcer disease. Second, the BVA failed to address the issue raised by the evidence as to whether appellant's gastric ulcer disease is a secondary disability arising from his nervous disorder diagnosed as generalized anxiety disorder. The veteran argued that his ulcer condition is a direct result of his anxiety disorder and PTSD which resulted from his military service. Both Dr. Crupie and Dr. Blanton noted the correlation between the veteran's anxiety and the gastric ulcers. Dr. Blanton felt that the veteran's stomach disorder was "partly due to the tension anxiety involved which increased the acid in his stomach and caused ulcers." Dr. Crupie found that the veteran's major emotional impairment manifested itself through his gastrointestinal symptoms. On remand, if service connection is established for either PTSD or generalized anxiety disorder, then the BVA must consider whether the gastric ulcer disease is a secondary service-connected disability and provide adequate reasons or bases for its findings and conclusions.

### C. Right Shoulder

■ While acknowledging that Culver injured his shoulder in service, the BVA concluded:

Any right shoulder symptom present during service was acute and transitory and resolved without residual disability. The current right shoulder disability, including arthritis, was first shown many years after service and is not of service origin.

*Culver*, BVA 90–16887, at 8. The BVA decision does not cite medical evidence of record in this case or recognized medical treatises to support its conclusion that no aspect of the right shoulder disability is of service origin. The BVA failed to point to any medical evidence to substantiate whether the veteran's current diagnosis of right shoulder bursitis is related to his injury in service. As the Court noted in *Colvin v. Derwinski*, 1 Vet.App. 171, 175 (1991):

If the medical evidence of record is insufficient, or, in the opinion of the BVA, of doubtful weight or credibility, the BVA is always free to supplement the record by seeking an advisory opinion, ordering a medical examination or citing recognized medical treatises in its decision that clearly support its ultimate conclusions.

The record reveals that the VA was on notice of Culver's treatment for shoulder pain, but failed to obtain the private medical records from Drs. Blanton, Brown, and

Daricer, or the pertinent medical records from the VAMC in Birmingham, Alabama, and from the Orthopedic Clinic at the VAMC in Memphis, Tennessee. In failing to obtain pertinent medical records to ascertain the source of the veteran's current shoulder bursitis, the BVA also failed to determine the credibility of the veteran's assertion that Dr. Marcus Stewart, the head of Orthopedic Surgery at the VAMC in Memphis, stated that the shoulder injury was caused by something other than the veteran's sheetrock work. The Court cannot exercise effective judicial review when, as here, the claim must be remanded for further development of the evidence in compliance with the duty to assist. *See Murincsak*, 2 Vet.App. at 373; *Ivey*, 2 Vet. App. at 323; discussion at part II.A. of this opinion, *supra.*

### D. Otitis Externa

In August 1987, the BVA awarded service connection for otitis externa, and the rating board evaluated the veteran's ear condition as 0% disabling. In order to receive a compensable rating of 10%, the veteran must present evidence that demonstrates "swelling, dry and scaly or serious discharge, itching, requiring frequent and prolonged treatment." 38 C.F.R. § 4.87a, DC 6210 (1991). Even though the veteran had sought some treatment for his hearing problem, the BVA found that "the veteran's service-connected otitis externa does not require frequent and prolonged treatment." *Culver*, BVA 90–16887, at 8.

Under 38 U.S.C. § 7261(a)(4) (formerly § 4061(a)(4)), "in order for a finding of material fact made by the BVA to be set aside, this Court must conclude that the finding is 'clearly erroneous.'" *Gilbert*, 1 Vet.App. at 52. Under this rule, the "Court is not permitted to substitute its judgment for that of the BVA on issues of material fact; if there is a 'plausible' basis in the record for the factual determinations of the BVA, ... we cannot overturn them." *Id.* at 53. Since the evidence presented does not meet the criteria for the assignment of a compensable rating under the schedule, there is a plausible basis in the record for the Board's factual conclusion,

and it cannot be overturned as clearly erroneous.

█ The Court recognizes that the VA examination conducted in September 1988 failed to include a review of all of the veteran's medical records, in violation of the duty to assist. *Wilson*, 2 Vet.App. at 20–21; *Green v. Derwinski*, 1 Vet.App. 121, 124 (1991); *Littke v. Derwinski*, 1 Vet.App. 90, 92 (1990). The error was harmless, however, as the September 1988 VA examination revealed that "his canals are normal, not infected. His tuning forks are normal, ... [h]ypopharynx normal. His audiogram is within normal limits. He has no sensorineural hearing loss. His reflexes are normal. His tympanograms are normal." There must be a current manifestation of the disease or injury for it to be assigned a compensable disability rating. 38 C.F.R. §§ 3.357(a), 4.31 (1991). This examination did provide a plausible basis for the BVA's factual conclusions, and thus, the Board's decision must be affirmed as to this issue. *See Collins v. Derwinski*, 2 Vet.App. 215, 217 (1992); *Gilbert*, 1 Vet.App. at 53.

The Court also notes that the record raises the issue of entitlement to service connection for otitis media. Dr. Welch's statement reveals the possibility of a misdiagnosis of otitis externa in the left ear during service that should have been diagnosed as otitis media. This issue, however, was not addressed by the BVA and was referred to the originating agency for appropriate development. *Culver*, BVA 90–16887, at 2. Thus, the Court is without jurisdiction to review this issue. 38 U.S.C. § 7252(b) (formerly § 4052(b)).

### III. CONCLUSION

The Board's decision is affirmed as to the veteran's claim for an increased disability rating for otitis externa, but the veteran's other claims must be remanded to verify the specific Vietnam stressors described by the veteran through a search by the U.S. Army and Joint Services Environmental Support Group; to consider a service-connected nervous disorder, to include PTSD

and generalized anxiety disorder; to comply with the duty to assist by acquiring all private and VA medical records that may be pertinent to appellant's claims of PTSD, nervous disorder, gastric ulcer disease, and bursitis of the right shoulder; to conduct "a thorough and contemporaneous medical examination, one which takes into account the records of prior medical treatment, so that the evaluation of the claimed disability will be a fully informed one" under *Green,* 1 Vet.App. at 124; to address the credibility of the testimony and statements of the veteran, the family physician, and the veteran's sister regarding the nervous breakdown shortly after service; to determine whether there is a correlation between the veteran's nervous disorder (if it is found to be service connected) and the current gastric ulcer disease; to make a specific medical determination as to whether the veteran's injury to his right shoulder during service is related to his current bursitis; and to provide reasons or bases for its findings and conclusions as required by 38 U.S.C. § 7104(d)(1).

The Board's decision is AFFIRMED in part and VACATED and REMANDED in part.

*It is so Ordered.*