GREENE, Judge,
dissenting:
I do not join the Court’s per curiam order today, because I feel that the record is adequate for judicial review. Furthermore, the question at issue is a question of law that I believe the Court can and should answer.
Initially, I cannot agree with the conclusion that the Board has “not yet addressed” the question of whether Mr. Wanless is incarcerated in a State penal institution. Ante at 337. In fact, the Board spends three full paragraphs discussing the veteran’s arguments on this very question, i.e., the question of whether the DCF, as a private prison contractor, constitutes a “State ... penal institution” within the meaning of 38 U.S.C. § 5313(a)(1). In the first two, the Board addresses and rejects the authority relied upon by Mr. Wanless in support of his views of section 5313. R. at 4-5. In the last, the Board correctly observes that his incarceration in a privately-managed prison does not negate the fact that he is serving time for a felony conviction imposed under Oklahoma state law. R. at 5. As shown below, the Board decision, though imperfect, is more than adequate.
First, the Board’s conclusion that Mr. Wanless is imprisoned for a State felony conviction follows Oklahoma law. In Washington v. Cornell Corr. Inc., the Court of Civil Appeals of Oklahoma addressed a civil suit brought by a prisoner incarcerated in a privately owned prison facility, and noted both that the prisoner had been “sentenced to a term of confinement in DOC custody,” and that his “confinement at GPCF [(Great Plains Correctional Facility)], although privately owned, does not alter his status as a prisoner.” Washington, 30 P.3d 1162, 1164 (Okla.Civ.App.2001). Under Okla. Stat. tit. 57, § 561(A), the Oklahoma Department of Corrections is authorized to contract with private prisons contractors for the operation of a prison. However, such a contractor must demonstrate “[t]he ability to comply with the standards of the American Correctional Association and with specific court orders.” Okla. Stat. tit. 57, § 561.1(C)(2). There is no merit in Mr. Wanless’ argument that he is not, under section 5313, in Oklahoma DOC custody *355 and incarcerated as a prisoner in a State penal institution. (To the extent that it might be argued that Mr. Wanless was only sentenced to confinement in DOC custody, but is now serving in something other than DOC custody, such a view would have this Court (or the Board on remand) contemplate a statement that the State of Oklahoma is contravening the order of the trial court by placing the veteran in a private prison over which there is no State control or recognition of the confinement terms for his felony conviction. Mr. Wan-less does not argue that he is not under State control and the statutes authorizing private prisons contradicts any such theory.)
Second, the Board’s rejection of Mr. Wanless’ argument regarding section 5313 is wholly in line with the view (which I share) that interpreting section 5313 in the manner proposed by him would lead to “a result demonstrably at odds with the intention of its drafters.” Gardner v. Derwinski, 1 Vet.App. 584, 586-87 (1991), aff'd sub nom. Gardner v. Brown, 5 F.3d 1456 (Fed.Cir.1993), aff'd, 513 U.S. 115, 115 S.Ct. 552,130 L.Ed.2d 462 (1994). Indeed, the Secretary does an excellent job of explaining the legislative history of section 5313:
The course the Appellant charts in this appeal would lead to an “absurd” result. In 1980, prior to the passage of 38 U.S.C. § 5313, the Honorable G.V. “Sonny” Montgomery, the principal sponsor of H.R. 7511, 96th Cong., the bill that became Pub.L. No. 96-385, explained the basis for the legislation as follows:
I do not see the wisdom of providing hundreds and thousands of dollars of tax free benefits to incarcerated felons when at the same time the taxpayers of this country are spending additional thousands of dollars to maintain these same individuals in penal institutions ....
126 Cong. Rec. 26, 118 (1980); see VAOPGC PREC 59-91. Additionally, Congressman Wylie stated, “[i]n the case of imprisonment, when a prisoner is being fully supported by tax dollars that fund the penal institution, it becomes ludicrous to continue payment of benefits designed to help him maintain a standard of living.” 126 Cong. Rec. 26, 122 (1980) (emphasis in original).
Secretary’s Br. at 10-11.
It should be noted that nowhere among the concerns expressed, nor among any other statement in the legislative history, is there a single statement that suggests that Congress was concerned whatsoever about limiting section 5313 so that it did not apply to individuals convicted by the Federal government or a State or local government, whose incarceration is carried out by a privately run contract-penal institution. Rather, Congress appeared to be concerned with the limitation of benefits to any incarcerated veteran, which was finally accomplished with a global limitation, based on the nature of the underlying offense (i.e., it applies only to felonies) and to incarceration after a set date.
In this case, Mr. Wanless believes that there is in section 5313 a distinction between prisoners incarcerated in state-owned prisons and those incarcerated in privately run (but state-contracted) prisons. Thus, he argues that he is entitled to the full amount of his VA benefits, rather than the reduced amount available to prisoners in actual DOC prisons. His belief is misplaced. There should be no dispute but that privately managed prisons are still operated under contract for the state, meaning that the state is still expending funds to incarcerate these prisoners. See generally http://www. doc. state, ohusf PrivatePrisons/privatepMm (visited Aug. *356 17, 2004) (“Private Prisons with Oklahoma DOC Contracts”; listing per diem expense to state per inmate).[1] Thus, I would hold that such arrangements are still well within the legislative intent of section 5313; the reasons for not helping a prisoner at a privately run institution maintain a standard of living are identical to the reasons for not doing so for a prisoner at a publicly run institution. The Board, in making its conclusion rejecting Mr. Wanless’ argument, was, consciously or not, recognizing that his argument would lead to an “absurd result.” See United States v. X-Citement Video, Inc., 513 U.S. 64, 69-70, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994) (noting the Court’s “reluctance to simply follow the most grammatical reading of the statute”).
By vacating the Board decision and remanding this matter, the majority must, necessarily, believe that Mr. Wanless’ argument should be given credence, i.e., that there may be a result here that negates application of the “absurd result” doctrine; if it felt otherwise and still remanded this matter, it would be acting in contravention to the dictates of the holding of Gardner, supra. The majority’s sub silentio finding that it cannot undoubtedly conclude that it would be an absurd result if section 5313 applied only to persons incarcerated in a “Federal, State, or local ... institution” and not to persons incarcerated in government-contracted, privately run facilities does not, of course, offer any basis on how Congress could have intended such a distinction. Indeed, there is no need for such a distinction, and no indication that Congress ever entertained, let alone acted on, such a strained interpretation. To conclude, as the majority must in order to find error here, that Congress may have sought to ameliorate these concerns by differentiating between prisoners confined in private prisons operated for the State versus those confined in actual State-owned prisons, quite simply, leads to an absurd result. Such a conclusion presumes a Congressional intention to create a sort of random, lottery-type veterans benefits system. A veteran convicted of a felony and incarcerated in a state-owned prison is eligible only for reduced benefits. But a veteran similarly convicted and sentenced but incarcerated in a privately run, state-contracted prison is eligible for full benefits. Congress could not have intended this result.[2]
The majority’s insistence here on having the Board conduct a detailed analysis of the contract between CCA and the Oklahoma DOC avoids the critical, indisputable fact: Mr. Wanless is a prisoner convicted of a felony by the State of Oklahoma and ordered imprisoned by that State at public expense. Nothing in the contract between CCA and DOC can change that fact.[3] *357 Even if the contract explicitly stated that this facility was not a State penal institution, section 5313 would still apply here with full force. This is because the authority in this situation flows from the statute down, not from the contract up. No contract can alter the basic intent of section 5313, which was to limit payments designed to maintain a standard of living to veterans who were already being housed, clothed, and fed at public expense. No matter how the Oklahoma DOC and CCA want to classify the arrangement, if these prerequisites are in place, section 5313 applies.[4] Any contrary conclusion is inconsistent with the concept that “the law is not an abstract concept removed from the society it serves.” Sandra Day O’Connor, A Tribute to Justice Thurgood Marshall: Thurgood Marshall: The Influence of a Raconteur, 44 Stan. L.Rev. 1217, 1218 (1992).
There does not seem to be any rationale for treating veterans incarcerated for state felony convictions in a state-contracted, privately owned facility more favorably than veterans incarcerated in state-owned prisons. I believe that both are State penal institutions. Indeed, since section 5313 was enacted, states (and the Federal government) have increasingly turned to private prison contractors as a way to save funds and to house prisoners where State facilities are inadequate. Indeed, in many states, the proportion of prisoners in privately run institutions is very high; for example, 43.4 % in New Mexico, 29.3% in Alaska, 16.5% in Mississippi, and 28.9% in Oklahoma. See tmAno.doc.state.okus/ MAPS/USJ_PC_private.htm (visited Feb. 27, 2004).
This is a case in which “the law and not the evidence is dispositive.” Sabonis v. Brown, 6 Vet.App. 426, 430 (1994). The Board decision should be affirmed.
I respectfully dissent.

. Oklahoma law authorizes the Oklahoma DOC to contract with privately-owned prisons to house and care for Oklahoma prisoners. See Okla. Stat. tit. 57, §§ 561(A), 561.1(B) (2003). Although the statute doesn't require the DOC to have a stated rationale for doing so, it is likely that such facilities may be necessary because the state cannot adequately house (for monetary or other reasons) some prisoners.

. Note that a result awarding full benefits to an incarcerated veteran would effectively divest apportionees of their right to such funds, and it would be logical for Congress to have an interest in having VA assist such appor-tionees.

.Indeed, we may judicially note that the Davis Correctional Facility is one of the CCA facilities with an Oklahoma DOC contract. As such, it could be concluded to be an agent of the State of Oklahoma and therefore a State prison for purposes of section 5313. See http://www.doc.state.ok.us/PrivatePrisons/ privatep.htm (visited Feb. 26, 2004) (listing Davis Correctional Facility, where Mr. Wan-less is incarcerated, as one of the private prisons with which Oklahoma DOC contracts). See also Smith (Brady) v. Derwinski, 1 *357 Vet.App. 235, 238 (1991) (noting that "[cjourts may take judicial notice of facts not subject to reasonable dispute”). I note that the information is not disputed by either party, is readily accessible to the public, and is therefore "not subject to reasonable dispute,” Smith (Brady), supra; thus we need not engage in any factfinding to take note of this information. Furthermore, regardless of whether we use this information or not, this much is clear: Mr. Wanless was convicted by the State of Oklahoma and is now incarcerated in the United States. Furthermore, nobody, not even Mr. Wanless, disputes that he is being incarcerated at, at a minimum, the behest of the State of Oklahoma, and nobody has alleged that the Davis Correctional Facility is housing Mr. Wanless free of charge. Given these facts, it seems an elementaiy deduction to arrive at the fact that he is, for purposes of section 5313, being incarcerated by a branch of Federal, State, or local government.

. The only likely situation in which I see section 5313 not applying would be one where a veteran is imprisoned in a foreign country (and hence not being cared for at the expense of the United States).