Citation Nr: 1334642 
Decision Date: 10/30/13 Archive Date: 11/06/13

DOCKET NO. 09-48 735 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Montgomery, Alabama


THE ISSUES

1. Entitlement to service connection for a low back disorder, claimed as arthritis. 

2. Entitlement to service connection for a left knee disorder. 

3. Entitlement to service connection for a right knee disorder. 

4. Entitlement to service connection for a left hand disorder, including status post fracture of the left fifth finger. 

5. Entitlement to service connection for a bilateral foot disorder, including hallux valgus. 

6. Entitlement to service connection for a disorder claimed as tenderness in the joints. 



REPRESENTATION

Appellant represented by: Paralyzed Veterans of America, Inc.


ATTORNEY FOR THE BOARD

T. Stephen Eckerman, Counsel


INTRODUCTION

The Veteran had active duty service from June 1995 to September 1995, December 1995 to August 1996, January 2002 to January 2003, and January 2003 to March 2004, with intervening inactive duty service, presumably with periods of active duty for training and inactive duty for training. 

This matter comes before the Board of Veterans' Appeals (BVA or Board) on appeal from an August 2008 rating decision from the Department of Veterans Affairs (VA) Regional Office (RO) in Montgomery, Alabama. In April 2011, the Board remanded the claims for additional development. 


FINDING OF FACT

The evidence of record does not show that the Veteran has a low back disability, a foot disability, a knee disability, a left hand disability, or a disorder involving tenderness in the joints, that is related to active duty service. 


CONCLUSION OF LAW

A low back disability, a foot disability, a knee disability, a left hand disability, and a disorder involving tenderness in the joints, were not incurred in, or otherwise due to, the Veteran's active duty service. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2002 & Supp. 2012); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309 (2013). 


REASONS AND BASES FOR FINDING AND CONCLUSION

I. Service Connection

The Veteran asserts that she has a low back disability, a foot disability, a knee disability, a left hand disability, and a disorder involving tenderness in the joints, that are related to active duty service. In her claim (VA Form 21-526), received in April 2008, she did not provide a date for the onset of any of the claimed disabilities. In March 2010, the Veteran claimed that she hurt her back carrying heavy equipment, and that she hurt her feet and knees wearing boots on long marches. 

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303. Service connection may also be granted on the basis of a post-service initial diagnosis of a disease, when "all of the evidence, including that pertinent to service, establishes that the disease was incurred during service." See 38 C.F.R. § 3.303(d). 
Service connection may also be granted for arthritis, when it is manifested to a compensable degree within one year of separation from service. 38 U.S.C.A. §§ 1101, 1112, 1113, 1137 (West 2002); 38 C.F.R. §§ 3.307, 3.309 (2013).

With chronic disease shown as such in service so as to permit a finding of service connection, subsequent manifestations of the same chronic disease at any later date are service connected, unless clearly attributable to intercurrent causes. 38 C.F.R. § 3.303(b). For the showing of chronic disease in service there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. Id. When the disease identity is established (leprosy, tuberculosis, multiple sclerosis, etc.), there is no requirement of evidentiary showing of continuity. Id. For this purpose, a chronic disease is one listed at 38 C.F.R. § 3.309(a). See Walker v. Shinseki, 708 F.3d 1331, 1338-39 (Fed. Cir. Feb. 21, 2013) (holding that the term "chronic disease in 38 C.F.R. § 3.303(b) is limited to a chronic disease listed at 38 C.F.R. § 3.309(a); and that continuity of symptomatology only relates the specified chronic diseases). A grant of service connection under 38 C.F.R. § 3.303(b) does not require proof of the nexus element; it is presumed. Id. 

The Veteran's service treatment reports include an August 1996 examination report which shows that her feet, and upper and lower extremities, were clinically evaluated as normal. In an associated "report of medical history" the Veteran reported a history of recurring low back pain in 1995, but that she did not receive treatment. She denied a history of swollen or painful joints, a "'trick' or locked knee," or foot trouble. She stated that she was in good health. 

A February 2001 "report of medical history" shows that she denied a history of swollen or painful joints, "recurrent back pain or any back injury," a "'trick' or locked knee," and foot trouble, and that she stated that her present state of health was good. 

A February 2002 "report of medical history" shows that she denied a history of recurrent back pain, foot trouble, swollen or painful joints, knee trouble, and "impaired use of arms, legs, hands, or feet," and that she indicated that she was currently in good health. 

In March 2002, the Veteran complained of left hand pain after falling. The examiner diagnosed her with a non-displaced fracture of the fifth metacarpal. Between April and May of 2002, she received a profile (light duty) for her left hand.

In December 2002, she was treated for complaints of right foot, and left knee symptoms, and "a previous broken hand." An associated DA Form 2173 indicates that her injuries were incurred during PT (physical training) and that they were in the line of duty. 

A January 2003 "annual medical certificate" notes that she denied having any current medical problems, and that she no longer had any restrictions due to her left hand. 

As for the post-service medical evidence, it consists of VA reports, dated between 2008 and 2012. The relevant evidence is summarized as follows: 

VA progress notes show that beginning in May 2008, the Veteran repeatedly complained of bilateral hand and right foot symptoms, primarily pain. She also reported having had "muscle joint pains," of at least three months duration. She was noted to have a foot bunion deformity, right greater than left, and hallux valgus ("HAV"), with at least one notation of metarsus primus elevatus. See e.g., May 2009 report. She underwent physical therapy for her hands during 2008. She reported that she was a hairdresser, and that she stood all day. See e.g., reports, dated in June 2009 and March 2011. An August 2008 report notes that an X-ray of the left hand showed an old, healed fracture of the fifth metacarpal, and that X-rays and an examination were unremarkable. The diagnosis was healed fx (fracture) metacarpal. An October 2008 EMG (electromyogram) shows that the Veteran reported that she worked as a hair stylist. The impression was "normal study of the upper extremities with no evidence of nerve entrapment." In July 2009, she underwent a modified Austin bunionectomy, right foot. The postoperative diagnosis was hallux valgus with bunion, right foot. Thereafter, she underwent physical therapy for her right foot. An October 2009 report notes that that the Veteran complained of left hand pain, and that X-rays were negative. The impression was sprain of the left hand with left upper extremity (LUE) pain. A January 2010 VA X-ray report for the lumbar spine notes that lumbar lordosis was maintained, and that the vertebral bodies, intervertebral spaces, and posterior elements appeared essentially normal. There was no evidence of compression fracture or dislocation noted. A May 2010 VA X-ray report for the lumbar spine contains an impression of "negative radiographic examination of the lumbar spine." Another report, dated that same month, shows that the Veteran underwent physical therapy for lumbar spine strain "from a workout video three weeks ago." A May 2012 magnetic resonance imaging (MRI) study for the lumbar spine notes a bulge at L3-4 causing moderate spinal stenosis and majority right foraminal encroachment, and dessication at L4-5 with annulus causing mild spinal stenosis and majority foraminal encroachments. In July 2012 the Veteran requested knee and back braces, and there was a notation of chronic knee and back pain. In May and August of 2012, she was treated for back pain. An August 2012 MRI for the lumbar spine notes a bulge at L3-4, and a bulge and a mild loss of disc height at L4-5. 

A VA Disability Benefits Questionnaire (DBQ) for the knee and leg, dated in October 2011, shows that the Veteran reported that she was a hairdresser, that she had pain in her kneecaps, and that she had difficulty standing "straight up" at work. The diagnosis was "strain both knees, due to occupational strain." The examiner concluded that it was less likely as not (less than a 50 percent probability) that the Veteran has a knee disability that was incurred in or caused by any inservice injury, event or illness. The examiner explained that inservice problems with the knees were not documented and that there was no evidence of an abnormal examination of either knee during service. The examiner stated that the Veteran's current knee symptoms are due to occupational strain as a hairdresser. 

A VA Disability Benefits Questionnaire (DBQ) for the hands, dated in October 2011, shows that the Veteran reported a history of a broken hand in 2002 during physical training, which had been casted. She stated that she worked as a hairdresser, and that she has pain in her left hand when she braids hair. The diagnoses were healed fracture left fifth metacarpal, and strain, left hand, due to occupational repetitive motion. The examiner concluded that it was less likely as not (less than a 50 percent probability) that the Veteran has a hand disability that was incurred in or caused by any inservice injury, event or illness. The examiner explained that service treatment records did not show a chronic abnormality in the left hand after her treatment for a boxer's fracture of the fifth metacarpal, that she does not report symptoms localized to her left fifth metacarpal at this visit, rather, she reports discomfort across her left hand. The examiner stated that her current symptoms in her left hand are more likely than not related to the repetitive motion activities required when she works as a hairdresser, such as braiding hair. The examiner concluded that it is not at least as likely as not that the current symptoms in the Veteran's left hand are a residual from the healed fracture. 

A VA Disability Benefits Questionnaire (DBQ) for the spine, dated in October 2011, shows that the Veteran reported a history of back pain in her low back when she works as a hairdresser, with flare-ups once a month. She stated that she thought she had a "disc on my nerve." The diagnosis was low back pain, due to occupational strain. The examiner concluded that it was less likely as not (less than a 50 percent probability) that the Veteran has a low back disability that was incurred in or caused by any inservice injury, event or illness. The examiner explained that service treatment records did not show a persistent abnormality in her low back, and that the current symptoms in her low back are more likely than not due to occupational strain while standing and working as a hairdresser. 

A VA Disability Benefits Questionnaire (DBQ) for the feet, dated in October 2011, shows that the Veteran reported a history of pain in her feet during service. She was noted to have had a bunionectomy in July 2009, and to have right foot stiffness since. She denied left foot symptoms at the examination. The diagnosis was strain, right foot, due to occupational strain. The examiner concluded that it was less likely as not (less than a 50 percent probability) that the Veteran has a right foot disability that was incurred in or caused by any inservice injury, event or illness. The examiner explained that service treatment records did not document severe symptoms in the right foot, or a chronic abnormality in the right foot. She concluded that the Veteran's current symptoms in her right foot are due to occupational strain and aging. She noted that the Veteran's right hallux valgus has been surgically corrected.

The Board notes that all of the October 2011 DBQs were completed by the same examiner, a physician, and that in each case, the examiner indicated that the Veteran's claims file had been reviewed. 

As an initial matter, the Board has determined that the Veteran is not a credible historian. The Veteran has indicated that she has symptoms of the claimed disabilities since her service. However, during service in January 2003, she denied having any medical problems, and there are no subsequent reports to show she had any of the claimed symptoms. He most recent period of active duty ended in March 2004. VA progress notes show that in May 2008, she reported that she had had hand and foot symptoms for the "last few months." This history was repeated in several other subsequently-dated reports. In October 2008, she reported a two-year history of hand symptoms. See October 2008 EMG report. In April 2010, she reported that she had had back pain for "several months," and, alternatively, for three to four months. In May 2010, she reported that she had back pain due to use of a workout video. In February 2012, she reported about a one-year history of left knee pain. In March 2012, she reported a history of low back pain beginning in about 2008. In May 2012, for the first time, she reported that she had fallen on her back during service, with an injury to her low back. The Board therefore finds that she is not a credible historian. See Wilson v. Derwinski, 2 Vet. App. 16, 19-20 (1991); Caluza v. Brown, 7 Vet. App. 498, 511 (1995) (in determining whether documents submitted by a Veteran are credible, the Board may consider internal consistency, facial plausibility, and consistency with other evidence submitted on behalf of the claimant). 

Under 38 U.S.C.A. §§ 1110 and 1131, an appellant must submit proof of a presently existing disability resulting from service in order to merit an award of compensation. Gilpin v. West, 155 F.3d 1353 (Fed. Cir. 1998).

VA generally does not grant service connection for symptoms which have not been associated with trauma or a disease process. See e.g., Sanchez-Benitez v. West, 13 Vet. App. 282, 285 (1999) ("pain alone, without a diagnosed or identifiable underlying malady or condition, does not in and of itself constitute a disability for which service connection may be granted."); dismissed in part and vacated in part on other grounds, Sanchez-Benitez v. Principi, 239 F.3d 1356 (Fed. Cir. 2001). Lumbar strain is an exception to this rule. See 38 C.F.R. § 4.71a, Diagnostic Code 5237 (2013). Thus, to the extent that there are "diagnoses" of "strain" of any of the claimed joints other than the low back, these are not compensable disabilities. 

With regard to the claim for a knee disability, the Veteran's service treatment reports show that in December 2002, she indicated that she had left knee symptoms. However, there is no evidence of treatment, pathology, or a bone fide diagnosis involving either of the knees. As for the post-service medical evidence, the only relevant evidence is the October 2011 VA DBQ, which contains a "diagnosis" of "strain both knees, due to occupational strain." However, there was no underlying pathology noted that would cause this strain, so the Board finds that a "diagnosis" of "knee strain" is not a description of a chronic disability that can be service-connected under the laws and regulations of VA. The examiner concluded that it was less likely as not that the Veteran has a knee disability that was incurred in or caused by any inservice injury, event or illness. Given the foregoing, the Veteran is not shown to have a knee disability, and the claim must be denied. Gilpin. 

With regard to the claim for a left foot disability, the Veteran's service treatment reports do not show any relevant treatment, pathology, or diagnosis. As for the post-service medical evidence, beginning in 2008, VA progress notes show that the Veteran was noted to have a bilateral foot bunion deformity, and hallux valgus, with at least one notation of metarsus primus elevates. The October 2011 VA DBQ for the feet shows that the Veteran denied having any left foot symptoms at the examination, and that there was no relevant diagnosis. Given the foregoing, the Veteran is not shown to have a left foot disability, and the claim must be denied. Id. 

With regard to the claim for a left hand disability, in March 2002, the Veteran was diagnosed her with a non-displaced fracture of the fifth metacarpal. Between April and May of 2002, she received a profile (light duty) for her left hand. In December 2002, she complained of symptoms that included "a previous broken hand." A January 2003 "annual medical certificate" notes that she denied having any current medical problems, and that she no longer had any restrictions due to her left hand. In 2008, about four years after separation from service, she complained of hand pain. An August 2008 report notes that an X-ray of the left hand showed an old, healed fracture of the fifth metacarpal, and that X-rays and an examination were unremarkable, and the diagnosis was healed fracture, metacarpal (emphasis added). An October 2008 EMG contains an impression of "normal study of the upper extremities with no evidence of nerve entrapment." In October 2009, a report noted that X-rays were negative, and the impression was sprain of the left hand with left upper extremity (LUE) pain. The October 2011 VA DBQ for the hands contains diagnoses of healed fracture left fifth metacarpal, and strain, left hand, due to occupational repetitive motion. The examiner concluded that it was less likely as not that the Veteran has a hand disability that was related to service, explaining inter alia that service treatment records did not show a chronic abnormality in the left hand after her treatment for a boxer's fracture of the fifth metacarpal, and that it is not at least as likely as not that the current symptoms in the Veteran's left hand are a residual from the healed fracture. It therefore appears that the Veteran's fracture of the fifth metacarpal is healed, and is without residual. Given the foregoing, the Veteran is not shown to have a left hand disability, and the claim must be denied. Id. 

With regard to the claim for a disorder claimed as tenderness in the joints, the Veteran's service treatment reports do not show any relevant treatment, pathology, or diagnosis. As for the post-service medical evidence, the Veteran complained of "muscle joint pains" in 2008, with no diagnosis. There is no competent evidence to show that she has a disorder manifested by multiple joint symptoms. Given the foregoing, the Veteran is not shown to have a disorder manifested by tenderness in the joints, and the claim must be denied. Id. 

With regard to the claim for a right foot disability, in December 2002, the Veteran complained of right foot symptoms, however, there is no evidence that she received treatment. A January 2003 "annual medical certificate" notes that she denied having any current medical problems. The post-service medical evidence shows that beginning in May 2008, the Veteran complained of right foot symptoms. She was noted to have a foot bunion deformity, right greater than left, and hallux valgus, with at least one notation of metarsus primus elevatus. In July 2009, she underwent a modified Austin bunionectomy, right foot. The postoperative diagnosis was hallux valgus with bunion, right foot. The October 2011 VA DBQ contains a "diagnosis" of strain, right foot, due to occupational strain. The examiner concluded that it was less likely as not that the Veteran has a right foot disability that was incurred in or caused by any inservice injury, event or illness. Given the foregoing, the Veteran is not shown to have had a chronic disease during service. See 38 C.F.R. § 3.309(b). Rather, the earliest post-service medical evidence of any relevant findings is dated in 2008, about four years after separation from service. The U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") has held that the theory of continuity of symptomatology can be used only in cases involving those conditions explicitly recognized as chronic at 38 C.F.R. § 3.309(a). Walker v. Shinseki, 708 F.3d 1331, 1338-39 (Fed. Cir. Feb. 21, 2013). The Veteran's right foot disorders are not among these conditions. In addition, there is no competent medical evidence to show that the Veteran's currently shown right foot disorders are related to her service. In this regard, the only competent opinion is contained in the October 2011 VA DBQ, and this opinion weighs against the claim. This opinion is considered to be highly probative evidence against the claim, as it is shown to have been based on a review of the Veteran's medical records, and it is accompanied by a sufficient rationale. Neives- Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008); Prejean v. West, 13 Vet. App. 444, 448-9 (2000) (factors for assessing the probative value of a medical opinion include the thoroughness and detail of the opinion). Accordingly, the Board finds that the preponderance of the evidence is against the claim, and that the claim must be denied. 

With regard to the claim for a low back disorder, the Veteran's service treatment reports do not show any relevant treatment, pathology, or diagnosis. As for the post-service medical evidence, X-rays taken in 2010 did not show lumbar spine pathology, however a May 2012 MRI study noted a bulge at L3-4 causing moderate spinal stenosis and majority right foraminal encroachment, and dessication at L4-5 with annulus causing mild spinal stenosis and majority foraminal encroachments. See also August 2012 MRI. The October 2011 VA DBQ for the spine contains a diagnosis of low back pain, due to occupational strain. 

To the extent that the Veteran has filed a claim for arthritis of the low back, there is no evidence to show that she has been diagnosed with arthritis of the low back, nor is there any other X-ray evidence to show low back arthritis as required by VA regulations. See 38 C.F.R. § 4.71a, Diagnostic Code 5003 (2013); VAGCOPPREC 9-98, 63 Fed. Reg. 56,704 (1998); see also Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009) (indicating that X-ray studies and other specific findings is needed to properly assess and diagnose the disorder). Accordingly, arthritis of the low back is not shown. Gilpin. 

To the extent that she currently has low back strain, the Veteran is not shown to have had a chronic disease during service. See 38 C.F.R. § 3.309(b). Rather, the earliest post-service medical evidence of any relevant findings is dated in 2010, about six years after separation from service. The Federal Circuit has held that the theory of continuity of symptomatology can be used only in cases involving those conditions explicitly recognized as chronic at 38 C.F.R. § 3.309(a). Walker. Lumbar strain is not among these conditions. In addition, there is no competent medical evidence to show that the Veteran's currently shown lumbar spine strain is related to her service. In this regard, the only competent opinion is contained in the October 2011 VA DBQ, and this opinion weighs against the claim. This opinion is considered to be highly probative evidence against the claim, as it is shown to have been based on a review of the Veteran's medical records, and it is accompanied by a sufficient rationale. Neives- Rodriguez; Prejean. Accordingly, the Board finds that the preponderance of the evidence is against the claim, and that the claim must be denied. 

The Board further points out that even assuming arguendo that the Veteran's strain of the knees, or of the left hand, was interpreted to show a compensable disability, the Veteran is not shown to have had a chronic disease during service. See 38 C.F.R. § 3.309(b). Rather, the earliest post-service medical evidence of any relevant findings is dated no earlier than 2008. The Federal Circuit has held that the theory of continuity of symptomatology can be used only in cases involving those conditions explicitly recognized as chronic at 38 C.F.R. § 3.309(a). Knee strain and left hand strain are not among these conditions. In addition, there is no competent medical evidence to show that the Veteran's knee or left hand strain is related to her service. In this regard, the only competent opinions are contained in the October 2011 VA DBQ, and these opinions weigh against the claims. These opinions are considered to be highly probative evidence against the claims, as they are shown to have been based on a review of the Veteran's medical records, and they are accompanied by a sufficient rationale. Neives- Rodriguez; Prejean. Accordingly, the Board finds that the preponderance of the evidence is against the claims, and that the claims must be denied. 

With regard to the Veteran's own contentions, a layperson is generally not capable of opining on matters requiring complex medical knowledge. Lay testimony is competent, however, to establish the presence of observable symptomatology and "may provide sufficient support for a claim of service connection." Layno v. Brown, 6 Vet. App. 465, 469 (1994). The issues on appeal are based on the contentions that a low back disability, a foot disability, a knee disability, a left hand disability, and a disorder involving tenderness in the joints, were caused by service. Although lay persons are competent to provide opinions on some medical issues, see Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011), as to the specific issues in this case, this falls outside the realm of common knowledge of a lay person. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). In any event, the Veteran has been found not to be credible. The medical records have been discussed. Given the foregoing, the Board finds that the medical evidence outweighs the Veteran's contentions to the effect that a low back disability, a foot disability, a knee disability, a left hand disability, and a disorder involving tenderness in the joints, were caused by service. 

The Board finds that the preponderance of the evidence is against the claims for service connection, and that the claims must be denied. 38 U.S.C.A. § 5107(b) (West 2002); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).


II. Duties to Notify and Assist

The Board finds that the duties to notify have been fulfilled by information provided to the Veteran in a letter from the RO dated in May 2008. 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2013). This letter notified the Veteran of VA's responsibilities in obtaining information to assist the Veteran in completing her claims, and identified the Veteran's duties in obtaining information and evidence to substantiate her claims. 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2013); Quartuccio v. Principi, 16 Vet. App. 183 (2002); Pelegrini v. Principi, 18 Vet. App. 112 (2004); Mayfield v. Nicholson, 19 Vet. App. 103 (2005); Dingess/Hartman v. Nicholson, 20 Vet. App. 473 (2006); Mayfield v. Nicholson, 20 Vet. App. 537 (2006); Vazquez-Flores v. Shinseki, 580 F.3d 1270, 1277 (Fed. Cir. 2009).

The RO also provided assistance to the appellant as required under 38 U.S.C.A. § 5103A and 38 C.F.R. § 3.159(c), as indicated under the facts and circumstances in this case. It appears that all known and available service medical reports, and post-service records relevant to the issues on appeal have been obtained and are associated with the Veteran's claims files. The RO has obtained the Veteran's VA medical records. With regard to all claims except the claim for a disorder involving tenderness in the joints, the Veteran has been afforded examinations, and etiological opinions have been obtained. 

With regard to the claim for a disorder involving tenderness in the joints, the Veteran has not been afforded an examination. Under McLendon v. Nicholson, 20 Vet. App. 79 (2006), in disability compensation (service connection) claims, the VA must provide a VA medical examination when there is (1) competent evidence of a current disability or persistent or recurrent symptoms of a disability, and (2) evidence establishing that an event, injury, or disease occurred in service or establishing certain diseases manifest during an applicable presumptive period for which the claimant qualifies, and (3) an indication that the disability or persistent or recurrent symptoms of a disability may be associated with the veteran's service or with another service-connected disability, but (4) insufficient competent medical evidence on file for the VA to make a decision on the claim. 

There is no competent evidence to show that the Veteran has a disorder manifested by tenderness of the joints. Her service treatment reports do not show any relevant complaints, treatment, findings, or diagnoses. There is no competent evidence to show that a disorder manifested by tenderness of the joints is related to service. Therefore, the first, second, and third McLendon criterion are not satisfied, and an examination and an etiological opinion need not be obtained. McLendon; see also 38 C.F.R. § 3.159(c)(4) (2013); Wells v. Principi, 327 F. 3d 1339, 1341 (Fed. Cir. 2002). 

In April 2011, the Board remanded these claims. The Board directed that the RO/AMC request and obtain any VA medical records not already associated with the claims file, including records from January 2010 to the present. This has been done, specifically, treatment reports dated through 2012 have been obtained. The Board further directed that the RO/AMC arrange for the Veteran to undergo an examination to determine the nature, extent, onset, and etiology of any back, right and/or left knee, left hand, and right and/or left foot disorder, including hallux valgus, found to be present. In October 2011, this was done. In this regard, in August 2013, the Veteran's representative argued that the October 2011 examination for the left hand was insufficient, because "the examiner did not provide any support for a finding that an injury such as a fracture would generally result in any pain localized only in the area of injury." 

The October 2011 VA examiner explained that service treatment records did not show a chronic abnormality in the left hand after her treatment for a boxer's fracture of the fifth metacarpal, and that she does not report symptoms localized to her left fifth metacarpal at this visit. Rather, she reports discomfort across her left hand. The examiner stated that her current symptoms in her left hand are more likely than not related to the repetitive motion activities required when she works as a hairdresser, such as braiding hair. The examiner concluded that it is not at least as likely as not that the current symptoms in the Veteran's left hand are a residual from the healed fracture. 

The examiner's statement implicitly indicates that that any residual pain from the Veteran's fractured fifth metacarpal would be localized at the point of fracture, and the Board is unaware of any authority for the proposition that such a statement must be accompanied by additional "support." Simply put, this is not an example of a complex medical issue which requires additional explanation. The Board therefore finds that the examiner's opinion is factually accurate, and that it is sufficiently reasoned and explained, and that it is probative. Neives-Rodriguez. 

Under the circumstances, the Board finds that there has been substantial compliance with its remand. See Dyment v. West, 13 Vet. App. 141, 146-147 (1999) (remand not required under Stegall v. West, 11 Vet. App. 268 (1998) where Board's remand instructions were substantially complied with); Sabonis v. Brown, 6 Vet. App. 426, 430 (1994) (remands which would only result in unnecessarily imposing additional burdens on VA with no benefit flowing to the veteran are to be avoided).

The Veteran and her representative have not argued that any error or deficiency in the accomplishment of the duty to notify has prejudiced her in the adjudication of her appeal. Shinseki v. Sanders, 129 S. Ct. 1696 (2009) (burden of showing that an error is harmful or prejudicial falls upon the party attacking the agency determination). In view of the above, the Board finds that the notice requirements pertinent to the issues on appeal have been met. 

In summary, the Board finds that the available medical evidence is sufficient for an adequate determination of the claims on appeal. There has been substantial compliance with all pertinent VA laws and regulations and to move forward with these claims does not cause any prejudice to the Veteran. 


ORDER

Service connection for a low back disability, a foot disability, a knee disability, a left hand disability, and a disorder involving tenderness in the joints, is denied. 


____________________________________________
JONATHAN B. KRAMER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs