Citation Nr: 1504661 
Decision Date: 01/30/15 Archive Date: 02/09/15

DOCKET NO. 04-30 175 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Los Angeles, California


THE ISSUES

1. Entitlement to service connection for post-traumatic stress disorder (PTSD).

2. Entitlement to service connection for sinus polyps and deviated septum.

3. Entitlement to service connection for bilateral arthritis of the knees.

4. Entitlement to service connection for a lumbar spine disability.

5. Entitlement to service connection for a cervical spine disability.


WITNESS AT HEARING ON APPEAL

Veteran

ATTORNEY FOR THE BOARD

J. Dworkin, Associate Counsel


INTRODUCTION

The Veteran served on active duty from January 1952 to July 1952 and from March 1961 to August 1961. 

This matter comes to the Board of Veterans' Appeals (Board) on appeal from a June 2002 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) Los Angeles, California. 

In February 2005, the Veteran testified before the undersigned Veterans Law Judge. A transcript of that hearing is of record. 

In a January 2006 decision, the Board denied entitlement to service connection for bilateral hearing loss, tinnitus, PTSD, sinus polyps and deviated septum, bilateral arthritis of the knees, a lumbar spine disability, a and cervical spinal disability. The Veteran appealed that denial to the United States Court of Appeals for Veterans Claims. In a March 2008 Order, the Court granted a Joint Motion for Remand of, vacated the Board's decision, and remanded the case for adjudication in accordance with the Joint Motion.

In October 2008, the Board remanded these matters for additional development. The Board finds that VA substantially complied with the Board's remand directives in further developing the Veteran's claims. Stegall v. West, 11 Vet. App. 268 (1998).

An April 2014 RO rating decision granted service connection for bilateral hearing loss, right chronic supurative otitis media, and tinnitus. As that is considered a full grant of benefits sought and the Veteran has not expressed a disagreement with the effective dates or ratings, those issues are no longer on appeal.

In September 2014, the Veteran's representative presented a motion to withdraw from representation. Good cause was found and that motion was granted. 38 C.F.R. § 20.608 (2014). The Veteran was notified that his representative had withdrawn and provided the opportunity to appoint another representative. He did not make any appointment within the allotted time.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). 38 U.S.C.A. § 7107(a)(2) (West 2014).


FINDINGS OF FACT

1. The Veteran's diagnosed PTSD is not etiologically related to active service.

2. The competent and probative evidence of record is against a finding that sinus polyps and deviated septum, bilateral arthritis of the knees, a lumbar spine disability, and a cervical spine disability are etiologically related to any incident in active service. 


CONCLUSION OF LAW

1. The criteria for service connection for PTSD have not been met. 38 U.S.C.A. §§ 1110, 5103, 5103A, 5107 (West 2002); 38 C.F.R. §§ 3.303, 3.304 (2014).

2. Sinus polyps and deviated septum, arthritis of the bilateral knees, a lumbar spine disability, and a cervical spine disability were not incurred in or aggravated by active service. 38 U.S.C.A. § 1110, 1131, 5103, 5103A, 5107(a) (West 2002 & Supp. 2014); 38 C.F.R. §§ 3.102, 3.310(a), 3.159, 3.303 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

In the Joint Motion for remand, the parties agreed that VA did not make a request for additional clinical records or military personnel records, or provide the Veteran with the required notice for a claim of entitlement to service connection for PTSD. The Board finds that the addition development agreed by the March 2008 Joint Motion has been completed. Therefore, all required development has been completed.

Upon receipt of a substantially complete application, VA must notify the claimant and any representative of any information, medical evidence, or lay evidence not previously provided to VA that is necessary to substantiate the claim. The notice must: (1) inform the claimant about the information and evidence not of record that is necessary to substantiate the claim; (2) inform the claimant about the information and evidence that VA will seek to provide; and (3) inform the claimant about the information and evidence the claimant is expected to provide. 38 U.S.C.A. §§ 5103, 5103A, 5107 (West 2002 & Supp. 2014); 38 C.F.R. § 3.159 (2014); Pelegrini v. Principi, 18 Vet. App. 112 (2004). If VA does not provide adequate notice of any of element necessary to substantiate the claim, or there is any deficiency in the timing of the notice, the burden is on the claimant to show that prejudice resulted from a notice error. Shinseki v. Sanders, 129 S.Ct. 1696 (2009). 

The Board finds that any defect with regard to the timing or content of the notice to the appellant is harmless because of the thorough and informative notices provided throughout the adjudication and because the appellant had a meaningful opportunity to participate effectively in the processing of the claim with an adjudication of the claim by the RO subsequent to receipt of the required notice. The record does not show prejudice to the appellant, and the Board finds that any defect in the timing or content of the notices has not affected the fairness of the adjudication. Mayfield v. Nicholson, 19 Vet. App. 103 (2005); Dingess v. Nicholson, 19 Vet. App. 473 (2006). Specifically, the Veteran was notified by letters dated in January 2003 and October 2008.

The Veteran has neither alleged nor demonstrated any prejudice with regard to the content or timing of the notice provided. Shinseki v. Sanders, 129 S. Ct. 1696 (2009) (burden of showing an error is harmful or prejudicial falls on party attacking agency decision); Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006). The Board considers it significant that the subsequent statements made by the Veteran and former representative suggest actual knowledge of the elements necessary to substantiate the claim. Dalton v. Nicholson, 21 Vet. App. 23 (2007) (actual knowledge is established by statements or actions by claimant or representative that demonstrate an awareness of what is necessary to substantiate a claim). 

Thus, VA has satisfied its duty to notify the appellant and had satisfied that duty prior to the adjudication of the April 2014 supplemental statement of the case. Overton v. Nicholson, 20 Vet. App. 427 (2006) (Veteran afforded a meaningful opportunity to participate effectively in adjudication of claim, and therefore notice error was harmless). 

The Board also finds that the duty to assist requirements have been fulfilled. All relevant, identified, and available evidence has been obtained and VA has notified the appellant of any evidence that could not be obtained. Specifically, in January 2009, the RO requested the Veteran's clinical treatment records from Tripler Army Hospital dated in 1952. A response for the Personal Information Exchange System indicated that the Tripler Army Hospital's clinical records library was not established until the 1960s and that any clinical records pertaining to the Veteran would have been combined with his service treatment records in his Official Military Personnel File. Unfortunately, this response also noted that the Veteran's Official Military Personnel File was destroyed in a 1973 fire. 

A February 2009 Information from the Hospital Admission Cards Created by The Office of The Surgeon General for the year 1952, showed that the Veteran had been treated at Tripler Army Hospital for four days due to otitis media. The information also noted that condition existed prior to entry on active service. No other hospitalizations or treatments were noted. 

In February 2012, the RO sent the Veteran a letter detailing the records that could not be procured and a response that showed a search was conducted for Sick Reports and Morning Reports for the 25th CO 8319 AU and for the 20th BN 8319 AU from February 1, 1952, through April 30, 1952, that showed no reports of accidents or injuries. 

The Board notes that the destruction of service records creates a heightened duty on the part of VA to consider resolving reasonable doubt in favor of the claimant, to assist the claimant in developing the claim, and to explain a VA decision. Cromer v. Nicholson, 19 Vet. App. 215 (2005); Russo v. Brown, 9 Vet. App. 46 (1996). 

Where service department records are missing, VA also has a duty to search alternate sources of service records. Washington v. Nicholson, 19 Vet. App. 362 (2005). In this case, the record contains the Veteran's enlistment and separation examinations and the available alternate service medical records from Tripler Army Hospital showing medical treatment for an ear ailment. The Board finds that VA has complied with the notification and assistance requirements. The appeal is thus ready to be adjudicated.

Thus, the Board finds that VA has satisfied the duty to assist. No further notice or assistance to the Veteran is required to fulfill VA's duty to assist. Smith v. Gober, 14 Vet. App. 227 (2000); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); Quartuccio v. Principi, 16 Vet. App. 183 (2002).

Service Connection

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated during service. 38 U.S.C.A. § 1110 (West 2002); 38 C.F.R. § 3.303 (2014). That determination requires a finding of current disability that is related to an injury or disease in service. Watson v. Brown, 4 Vet. App. 309 (1993); Rabideau v. Derwinski, 2 Vet. App. 141 (1992). Service connection may be granted for a disability diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disability is due to disease or injury that was incurred or aggravated in service. 38 C.F.R. § 3.303(d) (2014).

A disability which is proximately due to or the result of a service-connected disease or injury shall be service connected. 38 C.F.R. § 3.310(a) (2014). When aggravation of a nonservice-connected disability is proximately due to or the result of a service-connected disability, the Veteran shall be compensated for the degree of disability over and above the degree of disability existing prior to the aggravation. Allen v. Brown, 7 Vet. App. 439 (1995); 38 C.F.R. § 3.310(b) (2014).

Service connection for PTSD requires: (1) medical evidence establishing a diagnosis of the disorder; (2) credible supporting evidence that the claimed in-service stressor occurred; and (3) a link established by medical evidence, between current symptoms and an in-service stressor. 38 C.F.R. § 3.304(f) (2014). The PTSD diagnosis must be made in accordance with the criteria of American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (DSM-IV). 38 C.F.R. § 4.125(a) (2014).

The evidence necessary to establish the occurrence of a recognizable stressor during service to support a diagnosis of PTSD varies depending upon whether a Veteran engaged in combat with the enemy during service, whether the claimed stressor is a personal assault, and whether the claim is based on fear of a hostile military or terrorist act during service. 38 C.F.R. § 3.304(f) (2014); Gaines v. West, 11 Vet. App. 353 (1998). If VA determines that a veteran engaged in combat with the enemy and his alleged stressor is combat-related, then his lay testimony or statement is accepted as conclusive evidence of the stressor's occurrence and no further development or corroborative evidence is required, provided that testimony is found to be satisfactory, credible, and consistent with circumstances, conditions, or hardships of combat service. 38 U.S.C.A. 1154(b) (West 2002); 38 C.F.R. 3.304(f)(1) (2014); Zarycki v. Brown, 6 Vet. App. 91 (1993).

However, if the alleged stressor is not combat- or personal assault-related, then the Veteran's lay testimony, in and of itself, is not sufficient to establish the occurrence of the alleged stressor. Instead, the record must contain evidence that corroborates the testimony or statements. Cohen v. Brown, 10 Vet. App. 128 (1997); Moreau v. Brown, 9 Vet. App. 389 (1996). 

Lay evidence may also establish an alleged stressor where: (1) the stressor is related to the Veteran's fear of hostile military or terrorist activity; (2) a VA psychiatrist, VA psychologist, or VA-contracted psychiatrist or psychologist, confirms that the claimed stressor is adequate to support a diagnosis of PTSD and that the Veteran's symptoms are related to the claimed stressor; (3) the stressor is consistent with the places, types, and circumstances of the Veteran's service; and (4) there is no clear and convincing evidence to the contrary. 38 C.F.R. § 3.304(f)(3) (2014).

Fear of hostile military or terrorist activity occurs where a Veteran experienced, witnessed, or was confronted with an event or circumstance that involved actual or threatened death or serious injury, or a threat to the physical integrity of the Veteran or others, such as from an actual or potential improvised explosive device; vehicle-imbedded explosive device; incoming artillery, rocket, or mortar fire; grenade; small arms fire, including suspected sniper fire; or attack upon friendly military aircraft, and the veteran's response to the event or circumstance involved a psychological or psycho-physiological state of fear, helplessness, or horror. 38 C.F.R. § 3.304(f)(3) (2014).

In addition, there when service connection for PTSD is claimed based upon a personal assault during service, other considerations apply. 38 C.F.R. § 3.304(f)(5) (2014). However, the Veteran has not alleged that he has PTSD as the result of any personal assault during service. Therefore, the Board finds that those provisions do not apply.

PTSD

The Veteran asserts that his currently diagnosed PTSD was caused by active service. The Board concedes that the Veteran has a current diagnosis of PTSD.

The primary assertion of the Veteran is that he has PTSD due to a mortar shell that exploded near him that threw him 10 to 12 feet in the air and he landed violently causing him to the bleed from the mouth and ears, and also causing musculoskeletal injuries. He has also provided an additional stressor statement regarding witnessing a soldier fall upon a live grenade one week earlier than the mortar shell incident. The sole evidence supporting the contention is the Veteran's own contentions that the claimed events occurred. Although the Veteran has been diagnosed with PTSD, the Board notes that a diagnosis by a physician or other health care professional that has accepted a Veteran's description of active duty experiences as credible and diagnosed the Veteran as suffering from PTSD does not mean the Board is required to grant service connection for PTSD. Wilson v. Derwinski, 2 Vet. App. 614 (1992).

A review of the Veteran's service medical records shows no indication that the Veteran experienced an explosion from a mortar shell that threw him 10 to 12 feet and caused multiple injuries or witnessed a soldier throw himself upon a live grenade. 

An April 1952 service medical record shows that the Veteran was diagnosed with conjunctivitis and otitis media. During treatment the Veteran reported that his right ear showed signs of drainage one month prior. 

A May 1952 Final Summary concerning the Veteran noted that a physical examination showed a well-developed, well-nourished while male in no acute distress. The only medical condition referenced was a right ear disability that was diagnosed as chronic.

A June 1952 discharge examination showed that the Veteran was clinically evaluated as normal in all categories except for a chronic otitis media condition. The physician noted that the Veteran had a fungus infection of the feet, a preexisting mastoidectomy on the right side, and chronic ear infections. The physician found that the Veteran had no evidence of any eye pathology and no evidence of any bone pain in the knees. 

In September 1958, the Veteran submitted a claim for service connection for a right ear condition. A statement from Dr. M.K. indicated that the Veteran was treated for an abscess of the left ear and noises in the left ear. The records and statements submitted for that claim made no mention of the Veteran experiencing a mortar shell blast. 

In 1961, the Veteran enlisted in the United States Air Force. A January 1961 enlistment examination showed that the Veteran was evaluated clinically normal in all categories but for a right ear condition. The Veteran did not indicate he had any other health concerns other than a right ear condition on his enlistment examination. 

A March 1961 Medical Board examination showed that the Veteran was evaluated as clinically normal in all categories except his ear drums, and mouth and throat.

A July 1961 Air Force Physical Evaluation Board (PEB) hearing transcript showed that while the Veteran gave a detailed description of the history of his right ear condition he did not indicate that he had experience an explosion of a mortar shell during his previous enlistment with the United States Army. 

In a March 1986, the Veteran filed a claim for service connection for a crushed right heel which he indicated began in 1960, a broken left ankle which he indicated began in 1971, cartilage damage to both knees beginning in 1984, and a broken right hip beginning in in 1984. 

An August 1986 VA ENT consultation showed that the Veteran reported having hearing loss in the right ear since an incident in service with an artillery blast. 

A January 1986 VA mental and physical examination report shows that the Veteran reported feeling depressed and nervous during the previous two years. He indicated that his depression started after a major car accident in 1984. The Veteran noted that he had been discharged from the service on two occasions due to a right ear disability. The VA examiner noted that the 1984 car accident had caused injuries to both legs, both knees, and the Veteran's right hip. The VA examiner diagnosed the Veteran with an adjustment disorder with mixed emotional features. The examiner also summarized the Veteran's mental condition as being due to the fact that he was physically disabled and unable to work. 

In August 2001, the Veteran filed a claim for service connection for a sinus condition, deviated septum, a cervical spine condition, a low back condition, a bilateral knee condition, and PTSD. He claimed that those conditions were due to an exploding mortar shell that lifted him up and threw him 10 to 12 feet and he landed violently thus causing the conditions. He also claimed that PTSD was due to witnessing a soldier fall onto a live grenade during training. 

A September 2002 letter from a VA physician notes that the Veteran was being treated for multiple medical problems and for behavioral medical issues. The Veteran was diagnosed with degenerative arthritis of the legs and ankles, chronic back pain, and PTSD. The VA physician also reported that those injuries were due to a mortar misfire that caused the Veteran to be blown violently up in the air. Also noted was that because of that incident, the Veteran had PTSD. 

A January 2013 VA examination report shows that the Veteran was diagnosed with PTSD based upon the in-service stressors of witnessing a solider throw himself onto a live grenade and being throw back by a mortar shell explosion. 

The Board finds that the probative evidence is against the Veteran's claim for service connection for PTSD. Specifically, the Board finds that there is no verifiable in-service stressor on which the Veteran's diagnosed PTSD is based. While the January 2013 VA examiner opined that PTSD was at least as likely as not incurred in or caused by service, the rationale was based upon the absences of any verifiable evidence that the Veteran's claimed stressor of witnessing a soldier throw himself on a live grenade or a mortar shell explosion causing him to be violently thrown through the air did not occur. The question of whether the Veteran was exposed to a stressor in service is a factual one, and VA adjudicators are not bound to accept uncorroborated accounts of stressors or medical opinions based upon such accounts. Wood v. Derwinski, 1 Vet. App. 406 (1991). Therefore, whether a stressor was of sufficient gravity to cause or support a diagnosis of PTSD is a question of fact for medical professionals. Whether the evidence establishes the occurrence of a claimed stressor is a question of fact for adjudicators. 

Here, the VA examiner found that the Veteran's PTSD was at least as likely as not related to active service, which is within the VA examiner's realm of expertise. However, the Board finds that the credible and competent evidence does not support the Veteran's assertions of the two stressor events claimed. 

If the Veteran did not engage in combat with the enemy, or the claimed stressors are not related to combat, and the stressor is not related to fear of hostile military or terrorist activity, then the Veteran's testimony alone is not sufficient to establish the occurrence of the claimed stressors and his testimony must be corroborated by credible supporting evidence. Moreau v. Brown, 9 Vet. App. 389 (1996). Furthermore, service department records must support, and not contradict, the claimant's testimony regarding non-combat stressors. Doran v. Brown, 6 Vet. App. 283 (1994).

The Board has reviewed the Veteran's service medical records, service personnel records, and all evidence submitted by the Veteran. The record does not show any treatment or reports concerning the residuals of mortar shell blast. While the Veteran has submitted statements that he was treated for residuals from the blast which caused bleeding from his ears and mouth and musculoskeletal injuries, there are no such treatment records in the file. Moreover, while the Veteran has maintained that those injuries occurred in between February 1952 and April 1952, a June 1952 discharge examination showed that the Veteran was clinically evaluated as normal. In the Veteran's subsequent Air Force enlistment and discharge examinations conducted in 1961, he was again evaluated as normal with no mention of any mortar blast injuries by the Veteran. Had the Veteran actually incurred injuries form an alleged mortar blast, it is likely that he would have reported them during those medical examinations. 

The Board also finds that the RO made every reasonable attempt to request and procure any outstanding clinical treatment records. The Board also notes that a February 2009 Information from the Hospital Admission Cards Created by The Office of The Surgeon General for the year 1952, show that the Veteran was treated at Tripler Army Hospital for four days due to otitis media. That Information also noted that this condition existed prior to entry on active service. No other hospitalizations or treatments were noted. The Board finds that the competent and credible evidence of record is against a finding that the Veteran was in such proximity to a mortar shell blast that in caused PTSD or the other claimed disabilities on appeal. 

With regard to the Veteran's assertion of the additional stressor of witnessing a soldier throw himself on a live grenade, again, the only evidence of record corroborating that assertion is the Veteran's own statements. The Board acknowledges that the Veteran is competent to give evidence regarding what he experienced in-service, such as recounting events that he witnessed or feelings that he experienced. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006); Layno v. Brown, 6 Vet. App. 465 (1994). While the Veteran is competent to provide that evidence, claimed stressors must be corroborated by evidence other than his own testimony. The Board, as the fact finder, must determine the credibility of lay evidence. Culver v. Derwinski, 3 Vet. App. 292 (1992). There is simply no evidence of record that lends credence to the Veteran's statements that he observed a soldier throw himself on top of a live grenade. 

The Board notes that the RO confirmed that a search was conducted for Sick Reports and Morning Reports for the 25th CO 8319 AU and for the 20th BN 8319 AU from February 1, 1952 through April 30, 1952, that showed no reports of accidents or injuries. Had an accident of that nature occurred, it would most likely be shown in those reports.

Therefore, the Board finds that the record does not support the incurrence of the Veteran's claimed in-service stressor. There is simply no credible and competent evidence showing that the Veteran witnessed a soldier jump onto a live grenade or the Veteran being in such a close proximity to a mortar blast that he was throw in the air. While the Board acknowledges that the Veteran has been granted service connection for bilateral hearing loss based on noise exposure during service, specifically the sound of a mortar blast, that in no way concedes that the Veteran was in such close proximity to the mortar blast that it could have caused PTSD or any other disabilities other than his hearing loss. In addition, the Board finds that the credibility of the Veteran's assertions is severely lessened by the fact that the mortar blast was not mentioned for many years when disabilities were being claimed for service connection and has only now been advanced in furtherance of a claim for benefits.

The Board finds that the preponderance of the evidence is against a finding that the claimed stressors occurred during service. Therefore, the Board finds that the diagnoses of PTSD based on those stressors lack probative value. There is no evidence of record showing PTSD has been diagnosed based on a corroborated stressor, personal assault, participation in combat, or a fear of hostile military or terrorist activity.

Accordingly, the Board finds that the preponderance of the evidence is against the claim for service connection for PTSD. Therefore, the claim must be denied. 38 U.S.C.A. § 5107(b) (West 2002); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).
Sinus polyps and Deviated Septum, Bilateral Arthritis of the Knees, Lumbar Spine, and Cervical Spine

The Veteran contends that he currently has sinus polyps and deviated septum, arthritis of the right knee, lumbar spine disability, and cervical spine disability that are related to active service. The Veteran asserts that a mortar explosion occurred near him during his first period of service and those disabilities were a result of the injuries he suffered at that time. He further contends that a left knee disability is secondary to the claimed right knee disability and lumbar spine disability. He claims that he was treated at Tripler Army Medical Hospital. 

Although the Veteran may have those disabilities currently, the service medical records are negative for any complaints, findings, or diagnosis of those disabilities or any related complaints. The Veteran has claimed that he experienced a mortar explosion that threw him in the air between February 1952 and April 1952. Medical records in May 1952 for a Medical Board proceeding which evaluated the Veteran's right ear condition make no mention of any mortar shell explosion in the history, nor or are any findings attributed to an explosion which supposedly occurred within the preceding three months. The Board finds the lack of any reference to a mortar explosion in that examination report, and the lack of mention of the claimed mortar explosion for many years after service, of high probative value to show that a claimed mortar explosion in early 1952 did not occur.

In addition, in January 1961 at the enlistment examination for the Air Force, the Veteran denied having or having had any of the claimed disabilities. His clinical evaluation was normal in January 1961 and in March 1961, except for findings relating to his right ear, mouth, and throat. 

As the preponderance of the evidence of record is against a finding that a mortar explosion occurred in service in 1952 so close that it injured the Veteran, which the Veteran claims is the cause of his current disabilities, there is no incident in service shown to which the current claimed disabilities could be linked. The Board has examined the record, but finds no other claimed basis or plausible event that could have produced the claimed disabilities.

More recent VA outpatient treatment records show treatment for the claimed disabilities. That medical evidence, however, does not provide a link to service or to symptomatology since service. In fact, some of that evidence links some of the claimed disabilities to a post-service automobile accident.

The Veteran is also claiming that a left knee disability is secondary to right knee and lumbar spine disabilities. However, as service connection is not warranted for right knee or lumbar spine disabilities, service connection for a left knee disability cannot be granted as secondary to either of the claimed disorders. 38 C.F.R. § 3.310 (2014).

Based upon careful review of the evidence of record, the Board concludes that the preponderance of the evidence is against a finding that the Veteran's claimed current disabilities began during service. There is no competent medical evidence of record showing that the claimed disabilities have been linked to service or to any service-connected disability. No probative, competent medical evidence exists of a relationship between any currently claimed disorders and any continuity of symptomatology asserted by the Veteran.

The Board has not ignored the Veteran's statements or those submitted by his spouse and brother made in support of the claims. The Board finds that the Veteran, his spouse, and brother are laypersons, and for the purpose of providing an etiological opinion, they are competent to report observable symptoms they experience through their senses. Layno v. Brown, 6 Vet. App. 465 (1994). Whether lay evidence is competent and sufficient in a particular case is an issue of fact and lay evidence can be competent and sufficient to establish a diagnosis when (1) a layperson is competent to identify the medical condition (sometimes the layperson will be competent to identify the condition where the condition is simple, for example a broken leg, and sometimes not, for example, a form of cancer), (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Jandreau v. Nicholson, 492 F. 3d 1372 (Fed. Cir. 2007). However, PTSD, sinus polyps and deviated septum, bilateral arthritis of the knees, a lumbar spine disability, and a cervical spine disability are the type of disabilities that are not subject to a lay diagnosis. The Veteran can report that he has pain and his spouse and brother can report what the Veteran has told them or what they have observed. However, they do not have the medical expertise to discern the nature of the claimed disabilities, nor to provide an opinion regarding the etiology of any of the claimed disabilities. The issue does not involve a simple diagnosis. Thus, the Veteran's lay assertions are not competent or sufficient to provide an opinion as to etiology. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). 

Accordingly, the Board finds that the preponderance of evidence is against the claims for service connection for sinus polyps and deviated septum, bilateral arthritis of the knees, lumbar spine disability, cervical spine disability, and PTSD. Therefore, those claims must be denied. 38 U.S.C.A. § 5107(b) (West 2002); 38 C.F.R. § 3.102 (2014); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).


ORDER

Entitlement to service connection for PTSD is denied.

Entitlement to service connection for sinus polyps and deviated septum is denied.

Entitlement to service connection for bilateral arthritis of the knees is denied.

Entitlement to service connection for a lumbar spine disability is denied.

Entitlement to service connection for a cervical spine disability is denied.



____________________________________________
Harvey P. Roberts
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs