Citation Nr: 1518724 
Decision Date: 04/30/15 Archive Date: 05/05/15

DOCKET NO. 07-30 422 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Honolulu, Hawaii


THE ISSUES

1. Entitlement to service connection for bilateral hearing loss.

2. Entitlement to service connection for tinnitus.

3. Entitlement to service connection for an acquired psychiatric disorder, other than posttraumatic stress disorder (PTSD).


REPRESENTATION

Appellant represented by: Vietnam Veterans of America


ATTORNEY FOR THE BOARD

F. Yankey Counsel


INTRODUCTION

The Veteran served on active duty from December 1970 to September 1972.

This matter comes before the Board of Veterans Appeals (Board) from a
November 2005 rating decision issued by the Department of Veterans Affairs (VA)
Regional Office (RO) in in Honolulu, Hawaii.

In July 2011, June 2013 and April 2014, the Board remanded the case for further development by the originating agency. The case has been returned to the Board for further appellate action.

In December 2014, the Board referred the claim to a specialist affiliated with the Veterans Health Administration (VHA) for a medical opinion. That opinion was received in February 2015, and although, as discussed further below, the Board has determined that the opinion is partially inadequate, the Board has also determined that there is no need at this time for additional examinations or opinions with regard to the claim for service connection for an acquired psychiatric disorder, other than PTSD. 

The issues of entitlement to service connection for bilateral hearing loss and tinnitus are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the appellant if additional action is required on his part.


FINDING OF FACT

An acquired psychiatric disorder, other than PTSD, was not present in service or until many years thereafter, and is not related to service or to an incident of service origin.



CONCLUSION OF LAW

An acquired psychiatric disorder was not incurred in or aggravated by service. 
38 U.S.C.A. § 1110, 5103(a), 5103A, 5107 (West 2014); 38 C.F.R. § 3.303 (2014).


REASONS AND BASES FOR FINDING AND CONCLUSION

The Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000) (codified at 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2014) defined VA's duty to assist a veteran in the development of a claim. VA regulations for the implementation of the VCAA were codified as amended at 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2014).

Under the VCAA, VA must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. Pelegrini v. Principi (Pelegrini II), 18 Vet. App. 112, 120-21 (2004), see 38 U.S.C.A. § 5103(a); 
38 C.F.R. § 3.159(b). The United States Court of Appeals for Veterans Claims (Court) has also held that the VCAA notice requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) apply to all five elements of a service connection claim. Those five elements include: 1) veteran status; 2) existence of a disability; 3) a connection between the veteran's service and the disability; 4) degree of disability; and 5) effective date of the disability. Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006).

VCAA notice must be provided prior to an initial unfavorable decision on a claim by the RO. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004). Where complete notice is not timely accomplished, such error may be cured by issuance of a fully compliant notice, followed by readjudication of the claim. See Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); see also Prickett v. Nicholson, 20 Vet. App. 370, 376 (2006) (the issuance of a fully compliant VCAA notification followed by readjudication of the claim, such as a statement of the case or supplemental statement of the case, is sufficient to cure a timing defect). 

In April 2005, before the initial unfavorable AOJ decision issued in November 2005, the RO sent the Veteran a letter advising him of the evidence and information necessary to substantiate his service connection claims, as well as his and VA's respective responsibilities in obtaining such evidence and information. 
The Board notes that the April 2005 letter did not advise the Veteran of the information and evidence necessary to establish a disability rating and an effective date in accordance with Dingess/Hartman, supra. Nevertheless, the Board finds that there is no prejudice because service connection for an acquired psychiatric disorder, other than PTSD, is being denied herein and, thus, no disability ratings or effective dates will result from the Board's decision. Moreover, the Veteran has demonstrated throughout the course of this appeal that he understands the evidence necessary to substantiate his claim of service connection for an acquired psychiatric disorder, other than PTSD. The Court has held that actual knowledge of the evidence needed to substantiate a claim is established by statements or actions by the claimant or the claimant's representative that demonstrates an awareness of what is necessary to substantiate a claim. Dalton v. Nicholson, 21 Vet. App. 23, 30-31 (2007). Given the Veteran's specific statements regarding stressful events in service and the similar statements submitted by the Veteran's representative in support of his claim, the Board finds that the Veteran has demonstrated actual knowledge of the information and evidence needed to establish the claim of service connection for an acquired psychiatric disorder, other than PTSD.

For these reasons, it is not prejudicial to the Veteran for the Board to proceed to finally decide this issue as the notice error did not affect the essential fairness of the adjudication. 

The Duty to Assist

The VCAA also requires VA to make reasonable efforts to help a claimant obtain evidence necessary to substantiate his claim. 38 U.S.C.A. § 5103A; 38 C.F.R. 
§ 3.159(c), (d). This "duty to assist" contemplates that VA will help a claimant obtain records relevant to his claim, whether or not the records are in Federal custody, and that VA will provide a medical examination or obtain an opinion when necessary to make a decision on the claim. 38 C.F.R. § 3.159(c)(4). The VCAA also provides that VA will assist a claimant in obtaining evidence necessary to substantiate a claim but is not required to provide assistance to a claimant if there is no reasonable possibility that such assistance would aid in substantiating the claim.

Here, VA obtained all of the identified post-service VA treatment records and private medical records. The Veteran was also provided with VA medical examinations in conjunction with this appeal, including in August 2012, August 2013 and June 2014. As noted above, an opinion was also provided by a VHA specialist in February 2015. There is no reported relevant evidence that remains outstanding, nor is there any indication of the need for additional examinations or opinions as discussed further below. 

For the above reasons, no further notice or assistance to the Veteran is required to fulfill VA's duty to assist him in the development of the claim. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd, 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); see also Quartuccio v. Principi, 16 Vet. App. 183 (2002). Indeed, VA has satisfied its duty to inform and assist the Veteran at every stage in this case, at least insofar as any errors committed were not harmful to the essential fairness of the proceeding. Therefore, he will not be prejudiced as a result of the Board proceeding to the merits of his claim.

Legal Criteria

Service connection will be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred in or aggravated by active military service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(a).

Establishing service connection generally requires (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the present disability. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); see Caluza v. Brown, 
7 Vet. App. 498, 506 (1995), aff'd per curiam, 78 F.3d 604 (Fed. Cir. 1996) (table); see also Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); Hickson v. West, 12 Vet. App. 247, 253 (1999); 38 C.F.R. § 3.303. 

Under 38 C.F.R. § 3.303(b), an alternative method of establishing the second and third Shedden/Caluza elements is through a demonstration of continuity of symptomatology. Barr v. Nicholson, 21 Vet. App. 303 (2007); see Clyburn v. West, 12 Vet. App. 296, 302 (1999). Continuity of symptomatology may be established if a claimant can demonstrate (1) that a condition was "noted" during service; (2) evidence of post-service continuity of the same symptomatology; and (3) medical or, in certain circumstances, lay evidence of a nexus between the present disability and the post-service symptomatology. See Hickson, 12 Vet. App. at 253 
(lay evidence of in-service incurrence sufficient in some circumstances for purposes of establishing service connection); 38 C.F.R. § 3.303(b). The theory of continuity of symptomatology can be used only in cases involving those conditions explicitly recognized as chronic under 38 C.F.R. § 3.309(a), such as psychosis. See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). 

In relevant part, 38 U.S.C.A. 1154(a) requires that VA give "due consideration" to "all pertinent medical and lay evidence" in evaluating a claim for disability or death benefits. Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009). The United States Court of Appeals for the Federal Circuit (Federal Circuit) has held that "[l]ay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional." Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007); 
see also Buchanan v. Nicholson, 451 F.3d at 1337 ("[T]he Board cannot determine that lay evidence lacks credibility merely because it is unaccompanied by contemporaneous medical evidence").

"Symptoms, not treatment, are the essence of any evidence of continuity of symptomatology." Wilson v. Derwinski, 2 Vet. App. 16, 19 (1991). Once evidence is determined to be competent, the Board must then determine whether such evidence is also credible. See Layno, supra (distinguishing between competency ("a legal concept determining whether testimony may be heard and considered") and credibility ("a factual determination going to the probative value of the evidence to be made after the evidence has been admitted"). Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. 
§ 3.303(d).

With chronic disease shown as such in service, or within the presumptive period after service, so as to permit a finding of service connection, subsequent manifestation of the same chronic disease at any later date, however remote, are service-connected unless clearly attributable to intercurrent causes. 38 C.F.R. 
§ 3.303(b). The provisions of § 3.303(b) does not apply to any condition that has not been recognized as chronic under 38 C.F.R. § 3.309(a). Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). 

Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits under laws administered by the Secretary. The Secretary shall consider all information and lay and medical evidence of record in a case before the Secretary with respect to benefits under laws administered by the Secretary. 

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of the matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107 (West 2014); 38 C.F.R. 
§ 3.102 (2014); see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). To deny a claim on its merits, the evidence must preponderate against the claim. Alemany v. Brown, 9 Vet. App. 518, 519 (1996), citing Gilbert, 1 Vet. App. at 54. 


Analysis

Initially, the Board notes that, as discussed in the April 2014 decision and remand, the Board concluded that there is no competent evidence showing a diagnosis of PTSD from the Veteran's initial date of claim in April 2005, or a recent diagnosis prior to the filing of such claim, through the course of the appeal. As such, service connection for PTSD was denied. See April 2014 Board Decision and Remand.

Nevertheless, the Veteran is still seeking service connection for an acquired psychiatric disorder other than PTSD.

Service treatment records are negative for any evidence of a psychiatric disability.

VA and private outpatient treatment records dated from approximately 1989 to 2013, show that the Veteran began receiving treatment for reported symptoms of stress, anxiety, and anger outbursts in approximately 2008. The Veteran underwent a comprehensive clinical evaluation by Dr. P.T., Ph.D., a private clinical psychiatrist, in January 2008. Dr. P.T. ruled out a PTSD diagnosis, but provided an Axis I diagnosis of dysthymic disorder. She noted that the Veteran had a significant history of depression dating back to the military, and that his experiences "over racism, constant harassment, and threats of retaliation" had an overwhelmingly adverse impact on him. 

In addition to Dr. P.T's diagnosis of dysthymic disorder, VA treatment records dated from 2009 to 2010 reflect diagnoses of dysthymic disorder, adjustment disorder, and attention deficit disorder. 

Based on the above, the Board remanded the Veteran's claims in order to obtain a VA etiology opinion. In doing so, the Board requested that the VA examiner discuss, or reconcile, the findings contained in the private January 2008 psychological evaluation report. 

The Veteran underwent the requested VA examination in August 2012. The VA examiner found that the Veteran did not have a current mental disorder. In so finding, however, the examiner failed to specifically discuss the January 2008 diagnosis of dysthymic disorder, as well as the subsequent VA diagnoses of attention deficit disorder and adjustment disorder. 

The Veteran was afforded another VA examination in August 2013 where the examiner, again, determined the Veteran did not have a current mental disorder. The August 2013 VA examiner discussed why he did not render a diagnosis of dysthymic disorder at that examination; however, his discussion of such still did not address the previous diagnosis of dysthymic disorder in 2008. As such, the opinion is incomplete, and therefore, inadequate for evaluation purposes.

In accordance with the Board's third remand in April 2014, the Veteran was afforded another VA mental disorders examination. In June 2014, the examiner concluded that the Veteran does not currently meet the diagnostic criteria for any mental health disorder. With regard to the Veteran's 2008 diagnosis of dysthymic disorder, the June 2014 examiner noted that a clinical diagnosis of dysthymic disorder required evidence of occupational and social impairment. The Board notes that the examiner did not discuss whether the symptoms cause clinically significant distress, as provided by the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, of the American Psychiatric Association (DSM-IV) as a prerequisite for a dysthymic disorder diagnosis if there is no impairment in social, occupational or other important areas of functioning. Accordingly, the Board finds that the June 2014 VA examiner's opinion is also inadequate for evaluation purposes.

Consequently, the Board requested a VHA opinion in December 2014. The requested opinion was submitted in February 2015 by J.L.K., PsyD. Initially, Dr. J.L.K. noted that Dysthymic Disorder, which the Veteran was diagnosed with in 2008, is now known as Persistent Depressive Disorder, and according to the current version of the DSM-V, a diagnosis of this disorder requires clinically significant distress or impairment in social, occupational, or other important areas of functioning, and, therefore, the Veteran does not qualify for such a diagnosis. With regard to the Veteran's 2008 diagnosis of Dysthymic Disorder and Adjustment Disorder with Mixed Anxiety and Depressed Mood, the physician noted that there is no report of psychiatric symptoms or social/occupational impairment, "so it is not possible to tell if either of the diagnoses is accurate." He stated further that "put another way, in terms of accuracy of psychiatric diagnosis [he could not] make a decision without resort to mere speculation." 

The Board finds that this portion of Dr. J.L.K.'s opinion is inadequate for evaluation purposes. In this regard, although Dr. J.L.K. attempted to explain why he could not provide the opinion without resort to speculation, he did not indicate whether there was other evidence or information that he could use to adequately form the opinion. An examiner's report that he or she cannot provide an opinion without resort to speculation, is inadequate unless the examiner provides a rationale for that statement and states whether there is additional evidence that would enable the necessary opinion to be provided. Jones v. Shinseki, 23 Vet. App. 382 (2010). It is unclear from the examiner's opinion whether he found it at least as likely as not that any of the Veteran's psychiatric diagnoses in 2008 were accurate. The examiner was not required to state with certainty whether the diagnoses in 2008 were accurate, although the opinion implies that he was under the impression that the opinion required such certainty.

The evidence of record addressing whether the Veteran was diagnosed with a psychiatric disability, namely dysthymic disorder, in 2008 is conflicting. However, resolving all reasonable doubt in the Veteran's favor, the Board finds that the Veteran was diagnosed with dysthymic disorder in 2008, and therefore, there is evidence of a current disability during the appeal period. See McClain v. Nicholson, 21 Vet App 319 (2007) (the requirement that a current disability be present is satisfied "when a claimant has a disability at the time a claim for VA disability compensation is filed or during the pendency of that claim....even though the disability resolves prior to the Secretary's adjudication of the claim.").

However, the Board finds that the evidence of record does not show that the Veteran has been diagnosed with a psychiatric disorder since his diagnosis in 2008, and the previous diagnoses made during the appeal period have not been linked to his active military service. In this regard, the June 2014 VA examiner concluded that the Veteran does not currently meet the DSM V diagnostic criteria for any mental health disorder. With regard to the Veteran's previous diagnosis of Adjustment Disorder, the examiner noted that according to DSM V, criteria for adjustment disorder include the development of emotional or behavioral symptoms in response to an identifiable stressor occurring within three months of the onset of the stressor. As such, he opined that because the Veteran was diagnosed with adjustment disorder more than 40 years after his discharge, his diagnosis at that time was not likely associated with his military service, but rather was likely associated with stressors occurring at that point during his life in August 2013. With regard to the Veteran's previous diagnosis of Attention Deficit Disorder (ADD), the examiner initially noted that given that the diagnostic criteria for ADD require that symptoms be present prior to age 12, if the Veteran did have ADD, it would have predated his time in military service and not been caused by service. However, he also noted that there was no evidence of ADD on examination in August 2012 and August 2013. The VHA physician also opined, in his February 2015 report, that any current psychiatric issues the Veteran is experiencing are less likely than not related to his military service, including his reports of difficulty sleeping. 

There is no other evidence, VA or private, otherwise linking any current psychiatric disability to service. The January 2008 private medical opinion of Dr. P.T. is not persuasive, for the reasons outlined above.

The Board acknowledges the Veteran's belief that he has an acquired psychiatric disorder. In this regard, the Veteran is competent to report when he began experiencing psychiatric symptoms; however, as a layperson lacking in medical training and expertise, he cannot provide a competent opinion on matters as complex as the diagnosis and etiology of his symptoms. As such, his lay assertions regarding a diagnosis and causation of an acquired psychiatric disorder are of no probative value. Further, even if his opinion regarding the etiology of a current diagnosis of an acquired psychiatric disorder was afforded some probative value, it is far outweighed by the opinions provided by the VA psychologists and examiners who have greater training and expertise than the Veteran in diagnosing and assessing a psychiatric disorder. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006). To determine the cause of such a condition requires medical training and expertise that the Veteran does not possess. 38 C.F.R. § 3.159(a)(1),(2) (2014). Accordingly, there is no competent evidence of a link between the Veteran's psychiatric symptoms and his active service.

For the reasons and bases stated above, the Board finds that service connection for an acquired psychiatric disorder, other than PTSD, is not warranted. In reaching this decision, the Board has considered the benefit-of-the-doubt doctrine; however, as the preponderance of the evidence is against the claim, that doctrine is not applicable.


ORDER

Service connection for an acquired psychiatric disorder, other than PTSD, is denied.


REMAND

VA must make reasonable efforts to help a claimant obtain evidence necessary to substantiate his claim. 38 U.S.C.A. § 5103 (West 2014); 38 C.F.R. § 3.159(c), (d) (2014). The duty to assist contemplates that VA will help a claimant obtain records relevant to his claim, whether or not the records are in Federal custody, and that VA will provide a medical examination or obtain an opinion when necessary to make a decision on the claim. 38 C.F.R. § 3.1599(c)(4) (2014).

The Veteran contends that he has bilateral hearing loss and tinnitus, related to noise exposure in the form of chipping, hammers and engine rooms, while serving as an electrician's mate during active duty in the US Navy.

The service treatment records are negative for any evidence of hearing loss or tinnitus. However, service personnel records show that the Veteran's military occupation specialty was an electrical repairman. Accordingly, the Board finds that considering the places, types, and circumstances of his service, excessive noise exposure in service is conceded. 38 U.S.C.A. § 1154(a) (2014). 

It is not in dispute that the Veteran has current bilateral hearing loss and tinnitus. The question is whether the disabilities are related to service. In accordance with the Board's April 2014 remand, the Veteran was afforded a VA audiological examination in June 2014. The examiner diagnosed right and left ear sensorineural hearing loss, and opined that it was less likely as not that either disability was caused by or as a result of an event in military service. 

With regard to the right ear, the examiner noted that the claims file only contained the results of a whispered voice tests, which are known to be invalid measures of hearing, showing results of 15/15. He noted further that pure tone threshold results in 1989 showed normal hearing in the right ear with thresholds of 10 dB or better between 500-400 Hz (15 db at 250 and 8000 Hz). Therefore, he concluded that given that hearing was normal nearly 17 years after active duty, there is no indication of acoustic injury, and it is less likely than not that the current right ear hearing loss is due to noise exposure in service.

With regard to the left ear, the examiner noted again that the claims file only contained the results of a whispered voice test, which are known to be invalid measures of hearing, showing results of 15/15. He noted further that pure tone threshold results in 1989 were normal between 500-2000 Hz, 15 dB at 250 Hz and showed a mild loss at 8000 Hz, and 40 dB at 4000 Hz. The examiner concluded that if a permanent asymmetry (i.e., not erroneous, and not conductive) existed in 1989 (17 years after active duty) it is at least as likely as not that some form of asymmetry would have existed at the time of the examination; however, hearing during the examination revealed no asymmetry or difference between the left and right ear thresholds at any frequency (including 4000 and 8000 Hz). As such, he opined that the etiology of the Veteran's hearing loss was at least as likely as not the same in both ears, and that there is no nexus between the Veteran's current hearing loss and acoustic injury during active duty.

The examiner also opined that the Veteran's complaints of tinnitus were at least as likely as not a symptom associated with the hearing loss, as tinnitus is known to be a symptom associated with hearing loss. Accordingly, the Board assumes that the examiner believes the Veteran's tinnitus is also not related to noise exposure in service.

Essentially, the Board finds the examiner opined that, as there was no evidence of hearing loss or tinnitus at the time of the Veteran's discharge from service, or for many years thereafter, the Veteran's currently diagnosed bilateral hearing loss and tinnitus are not related to noise exposure in service. However, the Board's inquiry does not end there. Service connection is possible for disabilities first identified after service. 38 C.F.R. § 3.303(d) (2014). The June 2014 examiner did not provide an adequate opinion as to whether the hearing loss and tinnitus identified after service were related to a disease or injury in service or to the Veteran's reported symptomatology. As such, the Board finds that the opinion is inadequate, and therefore, does not contain enough information upon which to base a decision. VA regulations provide that, where an examination report does not contain sufficient detail, it is incumbent upon the rating board to return the report as inadequate for evaluation purposes. 38 C.F.R. § 4.2 (2014); see 38 C.F.R. § 19.9 (2014).

Hearing loss and tinnitus are manifested by symptoms that the Veteran is competent to report. The Veteran's reports provide competent and credible evidence of hearing loss and tinnitus during active military duty and a continuity of symptoms since. Therefore, the Board finds that a remand for a new examination and medical opinion as to the etiology of the Veteran's current bilateral hearing loss and tinnitus is necessary. 38 U.S.C.A. § 5103A(d) (West 2014).

The appellant is advised that it is his responsibility to report for the examination and to cooperate in the development of the case, and that the consequences of failure to report for a VA examination without good cause may include denial of the claims. See 38 C.F.R. §§ 3.158 and 3.655 (2014).

Accordingly, the case is REMANDED for the following action:

1. Updated treatment records should be obtained and added to the claims folder/efolder.

2. Following completion of the above, afford the Veteran a VA examination to determine the etiology of his currently diagnosed bilateral hearing loss and tinnitus. The examiner should review the claims folder and acknowledge such review in the examination report, and any indicated studies should be performed.

The examiner should elicit from the Veteran a detailed account of any instances of noise exposure before, during and after service, and whether the Veteran used hearing protection devices. The examiner is advised that military noise exposure is conceded. 

The examiner should provide an opinion as to whether it is at least as likely as not (50 percent probability or greater) that the currently diagnosed bilateral hearing loss and tinnitus are the result of noise exposure or other injury or disease in active service. 

A complete rationale should be given for all opinions and conclusions expressed. 

The examiner is advised that the appellant is competent to report injuries and symptoms, and that his reports must be considered in formulating the requested opinions. If his reports are discounted, the examiner should provide a reason for doing so. 

If the examiner cannot provide an opinion without resort to speculation, the examiner should provide an explanation as to why this is so and note what, if any, additional evidence would permit such an opinion to be made.

3. Then readjudicate the Veteran's claims for service connection for bilateral hearing loss and tinnitus. If any benefit sought on appeal is not granted, the AOJ should issue a supplemental statement of the case and provide the appropriate opportunity to respond, before returning the case to the Board, if otherwise in order.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
BARBARA B. COPELAND
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs